(566 P.2d 384)

No. 48,317

Mt. Carmel Medical Center, *Appellee and Cross-Appellant,* v. Board of County Commissioners of Labette County, Kansas, *Appellant and Cross-Appellee.*

Opinion filed June 3, 1977.

*William J. Daley,* county attorney, and *Daniel L. Brewster,* former county attorney, for the appellant and cross-appellee.

*Robert J. Fleming,* of Weir, Angwin & Towner, of Pittsburg, for appellee and cross-appellant.

Before Abbott, P.J., Foth and Spencer, JJ.

Abbott, J.: This is an action brought by Mt. Carmel Medical Center of Pittsburg, Kansas, against the Board of County Commissioners of Labette County, Kansas, seeking recovery of money

due on a hospital bill for medical services furnished an indigent prisoner who was injured when he jumped from the fourth floor of the Labette County Courthouse in Oswego, Kansas.

The trial court allowed recovery of the hospital bill on the theory that defendant was negligent in allowing the prisoner to escape from jail and that the prisoner's injuries and medical care were incurred as a result of his escape. The learned judge specifically denied recovery on a statutory duty theory holding as a matter of law that the prisoner was in the status of an escaped prisoner when the injuries occurred and "that the county was not liable for medical attention for indigent prisoners while the prisoner was in the status of an escaped prisoner from the custody of the sheriff."

The Board of County Commissioners of Labette County, Kansas, hereinafter referred to as the county commission or county commissioners, appealed from the judgment alleging the trial judge erred in (1) finding the sheriff negligent, (2) finding the prisoner's injuries were the direct and proximate result of the sheriff's negligence, (3) not applying the doctrine of governmental immunity, (4) finding Labette County liable for the sheriff's negligence, and (5) failing to find that Mt. Carmel Medical Center was not the real party in interest pursuant to K.S.A. 60-217 (*a*).

Mt. Carmel Medical Center, hereinafter referred to as the hospital, cross appealed alleging the trial judge erred in (1) finding the prisoner was an escaped prisoner when injured, (2) finding the county was not liable for medical treatment to an indigent prisoner in the status of an escaped prisoner, (3) not finding that the sheriff had a duty to recapture the escaped prisoner, and (4) his conclusion that the sheriff could have recaptured the prisoner either at the time he was injured or after his hospitalization was not determinative of the county commission's liability for the hospital bill.

The material facts are not in dispute. William Love was a prisoner in the Labette County jail serving a one-year misdemeanor sentence. The prisoner was completing his eighth month as an inmate and had obtained trustee status. The jail, the jailer's quarters, and other facilities used by the sheriff are located on the fourth floor of the courthouse. Some nights a jailer occupied the jailer's quarters, but on three nights a week the jailer was off duty and no one other than the prisoners was on the fourth floor. The

sheriff did not know whether or not a jailer was at the jail on the night of the escape. In any event, no one checked on the prisoner from 10:00 p.m. until the following morning.

On September 22, 1974, at approximately 2:00 a.m., Love removed a ceiling panel and some two-by-four's and crawled through an opening above a locked steel door into a storeroom. The prisoner walked down a hallway to an unlocked window and either jumped or dropped four stories to the ground. Among other injuries, the prisoner received a broken leg. A neighbor heard his screams and called the Oswego police. The police arrived and called an ambulance. The ambulance, a doctor and a sheriff's deputy arrived at the scene. The doctor recommended hospital-ization where orthopedic care was available. The deputy sheriff concurred in the decision to send Love to the hospital. Love was then transported to the hospital.

Love was hospitalized until October 11, 1974. Upon his dis-charge from the hospital, Love was picked up by the Labette County sheriff and transported to the home of Love's parents. Love's leg was still in a cast, and medical personnel had advised the sheriff that Love should be kept under observation. The sheriff did not have the personnel to stay around the clock with Love, so Love was taken to the home of his parents who agreed to take care of him. No guards were posted at either the hospital or the home of Love's parents. Love was never picked up and put back in jail to serve any remaining sentence. Love, however, was back in jail on two other separate and unrelated offenses, and while he was in jail the sheriff's staff transported him to his doctor for treatment of his leg. No charge of escape or attempted escape was ever filed against Love.

Appellant is correct that the trial court erred in not applying the doctrine of governmental immunity. From statement of counsel on oral argument, it is apparent the trial judge was under the impression *Brown v. Wichita State University,* 217 Kan. 279, 540 P.2d 66, had declared the doctrine of governmental immunity unconstitutional and void and no longer applicable in Kansas. After this case was tried and judgment rendered, a rehearing was granted in *Brown,* supra, and the original decision is modified in *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015.

Prior to 1969, the law in Kansas was that a county was not liable for damages for negligence unless such liability was expressly

authorized by statute or necessarily implied therefrom, even when the negligence arose at a time when the county was engaged in a "proprietary" function as opposed to a "governmental" function. (*Caywood v. Board of County Commissioners*, 194 Kan. 419, 399 P.2d 561.) In 1969, the Supreme Court abolished the *doctrine of governmental immunity* as to all governmental bodies of the state when engaged in proprietary activities as distinguished from governmental activities. (*Carrol v. Kittle*, 203 Kan. 841, 457 P.2d 21.) In *Carrol*, the court stated each case must be governed by its own particular facts and gave broad guidelines that "[a] governmental agency is engaged in a proprietary activity when it embarks on an enterprise which is commercial in character or is usually carried on by private individuals, or is for the profit, benefit or advantage of the governmental unit conducting the activity." (Syl. 7.)

The court in *Carrol* went on to recognize the authority of the legislature to control governmental immunity and in effect invited the legislature to adopt a comprehensive tort claims act. Rather than adopt a tort claims act, the next session of the legislature adopted K.S.A. 46-901, *et seq.* in 1970, and the two *Brown* cases, supra, followed.

Plaintiff cannot recover against the county for negligence in the absence of statutory authority (express or implied) unless it can show the county's negligence arose out of a "proprietary" function as distinguished from a governmental function. Kansas has long held that the maintenance and operation of law enforcement departments and jails are governmental functions as distinguished from proprietary. (*Pfefferle v. Comm'rs of Lyon Co.*, 39 Kan. 432, 18 Pac. 506; *Daniels v. Kansas Highway Patrol*, 206 Kan. 710, 482 P.2d 46.) No statutes are cited by appellee granting either express or implied authority to sue, nor does appellee claim waiver of immunity by purchase of liability insurance pursuant to statute.

Appellee argues that the county did not affirmatively plead governmental immunity as a defense and thereby waived that defense. The trial court, in considering the county's motion to alter or amend judgment, noted that the county was adequately advised of the hospital's theories, that the hospital was advised of the county's affirmative defenses, and that the parties had consented to the court's considering all theories advanced and all

affirmative defenses. The judge then made a specific finding: "The Court finds that defendant cannot hide behind the doctrine of governmental immunity, and that [as] a practical matter, governmental immunity is a dead issue in this State. The county in operating a jail is not immune from tort liability."

The county did not waive governmental immunity, and the trial court considered the issue even though the court rejected the theory. We note there is authority that a claimant has the burden of pleading and proving his right to bring an action for damages for negligence against governmental units. (57 Am.Jur.2d, Municipal, Etc., Liability, § 310, p. 261.) Further, there is authority that governmental immunity is not an affirmative defense, but is jurisdictional and may be raised at any time. (*Moore v. City of St. Petersburg,* 281 So.2d 549 [Fla. App. 1973].) In view of the trial court's consideration of the issue and our decision, we need not determine whether governmental immunity is jurisdictional or an affirmative defense, and do not do so.

The remainder of appellant's points, some of which appear to have merit, need not be considered as a result of our decision that the hospital's claim is barred insofar as it is based on a tort theory. It is a well-established rule that the judgment of a trial court will be upheld if it is correct, even though the trial court may have assigned an erroneous reason for its decision when the determinative facts are undisputed. (*Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 548 P.2d 719; *Yellow Freight System, Inc., v. Kansas Commission on Civil Rights,* 214 Kan. 120, 124, 519 P.2d 1092.)

We turn now to appellee's cross appeal. Both parties agree that in Kansas a sheriff has a duty to furnish medical attention to a prisoner in his custody who is in need thereof, at the county's expense if the prisoner is indigent and no other source of funds is available. This is clearly the law in Kansas. (*Pfannenstiel v. Doerfler,* 152 Kan. 479, 105 P.2d 886; *Levier v. State,* 209 Kan. 442, 497 P.2d 265.)

The trial judge made a finding of fact that Love was injured while in the status of an escaped prisoner. In the applicable criminal statute (K.S.A. 21-3809 [2]), "escape" has been defined to mean "departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court."

In *State v. McGrew,* 190 Kan. 834, 378 P.2d 94, the prisoner was convicted of "breaking the county jail" when he escaped from a third floor window of an administrative office of the sheriff. Both the jail and the administrative office were located on the third floor. The court held the removal of the screen and opening of a window in the administrative office constituted a breaking of the jail. The trial court, based on the rationale of *McGrew,* supra (30A C.J.S., Escape, § 4, p. 877; 72 C.J.S., Prisons, § 23 [c], p. 893; and 27 Am.Jur.2d, Escape, Prison Breaking, and Rescue, § 1, p. 848), had ample evidence before it to support its finding that Love was in the status of an escaped prisoner when he landed on the ground and received the injuries that led to the hospital bill sued on, and that finding will not be disturbed on appeal. The fact that Love was an escaped prisoner when he suffered the injury is not determinative of the sheriff's responsibility to provide medical services for the prisoner. The determinative factor is whether Love was in custody when the decision was made to transport Love to the hospital. The fact that the sheriff did not post a guard at the hospital would be immaterial, for, once the duty to furnish medical care attaches, the hospital's claim cannot be defeated by the sheriff's failure to carry out his sworn duties due to the lack of manpower.

We are of the opinion custody had been reestablished as a matter of law prior to the prisoner's being placed in the ambulance and transported to the hospital. To hold otherwise defies logic.

The sheriff of Labette County has charge and custody of the county jail of his county and of all prisoners in the same (K.S.A. 19-811). A deputy sheriff arrived at the scene shortly after the escape occurred. Love was lying under an open window and was obviously badly injured. The deputy knew Love was a prisoner and concurred with the doctor in the decision to take Love to the hospital. The deputy was also fully aware that Love was serving a sentence imposed by a local judge and that his sentence had not been terminated, suspended, or set aside. The deputy, as an agent of the sheriff, clearly had a statutory duty and obligation to reacquire custody of Love (K.S.A. 22-3427).

In addition, our Supreme Court has held, "It is the duty of a sheriff to confine prisoners committed to his care in strict ac-

cordance with provisions of the commitments under which they are received and to faithfully execute the sentences imposed." (*State, ex rel., v. Robinson,* 193 Kan. 480, Syl. 1, 394 P.2d 48.) In *Robinson,* the Supreme Court ousted a sheriff for allowing a prisoner serving a sentence to go home nights and return to jail in the morning, with no supervision or control by the sheriff over the prisoner. In *Robinson,* the court said:

"It was held long ago that where a court has pronounced sentence, '. . . it is the duty of the sheriff to immediately proceed to carry the sentence into effect. . . .' (*In re Strickler, Petitioner,* 51 Kan. 700, 702, 33 Pac. 620.) In *Jackson v. State,* 52 Kan. 249, 34 Pac. 744, this very same rule was applied, and we said:

" '. . . it is the duty of the sheriff to take prisoners into his custody and keep them. If he has no convenient place for doing so, he must use one that is not so convenient. . . .' (p. 252)

"In *Whalen v. Cristell,* 161 Kan. 747, 173 P.2d 252, this court held:

" 'The duty of an officer in executing the mandate of a judicial order in the nature of a commitment is purely ministerial and his power with respect thereto is limited and restricted to compliance with its terms.' (Syl. 4.)" (p. 484.)

The sheriff recognized that duty. The prisoner was released from the hospital to the sheriff, who took the prisoner to the home of the prisoner's parents solely because the sheriff did not have the manpower to provide the care that the prisoner needed. The sheriff testified that after Love broke his leg, "he was still, as far as I was concerned, a prisoner and entrusted to my custody." The sheriff, or deputy, had a duty to use every lawful means to recapture and return the prisoner to jail (27 Am.Jur.2d, Escape, *supra,* § 26, p. 867).

No one can reasonably argue that had Love been found by the sheriff or deputy at the same location in an uninjured condition the sheriff or deputy could have refused to retake custody. Indeed, had the sheriff or deputy refused to reacquire custody, he might well be charged with a crime under K.S.A. 21-3812 (*c*), as well as being subject to ouster.

Appellant sets forth many arguments as to what could happen if this judgment is affirmed and carries the examples to the extreme. Our answer is that each case must be judged on its own individual set of facts. In this case the sheriff had reacquired custody of the prisoner in an injured condition. It was the sheriff's duty to provide the indigent prisoner with medical care of a type and kind that could not be provided in the county jail or in any place other than a hospital. The sheriff could not abandon

his prisoner or merely put the injured indigent prisoner back in a cell without medical care. Such actions would violate K.S.A. 19-1919, which requires humane treatment of a prisoner. The sheriff also would run the risk of incurring personal civil liability (*Pfannenstiel,* supra) by such neglect. The prisoner was transported to the hospital with the knowledge and consent of the sheriff's deputy who had a responsibility in the matter. The prisoner remained in the hospital with the sheriff's knowledge and consent.

We conclude that the medical services rendered by the appellee were proper charges against the county under the facts in this case.

Affirmed.