(634 P.2d 163)

No. 52,275

DODGE CITY MEDICAL CENTER, *Appellee,* v. BOARD OF COUNTY COMMISSIONERS IN GRAY COUNTY, KANSAS, *Appellant.*

Opinion filed October 2, 1981.

*Curtis E. Campbell,* county attorney, and *Ken W. Strobel,* of Dodge City, for the appellant.

*Glenn I. Kerbs,* of Patton & Kerbs, of Dodge City, for the appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

FOTH, C.J.: The Board of County Commissioners of Gray County, Kansas, appeals from a judgment holding it liable for $3,205.00 in medical expenses for services rendered by the plaintiff Dodge City Medical Center, a partnership, to one Russell Lopez.

The case was submitted on stipulated facts showing that on March 20, 1978, a Gray County deputy sheriff came upon Lopez in the midst of committing a burglary. When called upon to surrender, Lopez opened fire. The deputy returned the fire with a riot gun, seriously wounding Lopez. The deputy summoned an ambulance and the sheriff. The sheriff drove Lopez in the ambulance to the Dodge City Regional Hospital, where he was treated by the plaintiff doctors. No formal arrest was made then or at any time during Lopez's three-week stay in the hospital, nor was he under guard.

On April 10, as requested, the treating physician called the Gray County sheriff's office and advised that Lopez would be released the next day. A complaint was promptly filed charging him with burglary, attempted theft, and aggravated assault on a police officer. The next day, as Lopez was discharged, the Gray County sheriff arrested him. At his first appearance before a magistrate he was found to be indigent.

The Dodge City hospital received partial compensation from the State Department of Social and Rehabilitation Services. The medical center, which provided the actual medical services, tried the Veterans Administration but was turned down because of the source of Lopez's injuries. It did not attempt to secure payment from SRS.

The county's liability under these circumstances is largely controlled by *Mt. Carmel Medical Center v. Board of County Commissioners,* 1 Kan. App. 2d 374, 566 P.2d 384 (1977). There a prisoner in the county jail was injured while effecting an escape. We held:

"A sheriff has a duty to furnish medical attention to a prisoner in need thereof while in his custody, and at the county's expense if the prisoner is indigent and no other source of funds is available." Syl. ¶ 4.

We further held that the prisoner's status as an escapee did not affect the result when a deputy on the scene acquiesced in the injured prisoner's being taken to a hospital. Neither did it matter that the prisoner was not under guard while hospitalized. It was the deputy's duty to take the prisoner into custody when he came upon him, and in the eyes of the law the prisoner was "in custody" while hospitalized with the deputy's concurrence.

In this case the trial court found that Lopez was in the custody of the Gray County sheriff while hospitalized, that he was indigent, and that there was no other source of funds available for his treatment. Those findings meet the *Mt. Carmel* test and impose liability if supported by the stipulated facts. The county concedes indigence, but contests the finding of custody and the unavailability of other funds.

We agree Lopez was "in custody." He was apprehended in the commission of a felony. Had he not been injured there is no question but that pursuant to duty the sheriff would have taken him to jail and not to the hospital. "The right and duty of sheriffs

to make arrests without warrant for crimes committed in their presence . . . may be conceded." *Marsh v. Express Co.,* 88 Kan. 538, 542, 129 Pac. 168 (1913). See also K.S.A. 19-813; 5 Am. Jur. 2d, Arrest § 24. Here, as in *Mt. Carmel,* the fact he was not under guard is not controlling. Lopez was severely wounded; the odds against his "escape" from the hospital were long; had he attempted to do so he would no doubt have been pursued; the doctors were to advise the sheriff when he was ready to leave; and he was formally arrested when he did leave. For all practical purposes Lopez was in the sheriff's custody at all times. Had the deputy said "you're under arrest" instead of merely calling for Lopez's surrender, or had the sheriff uttered those words any time before committing him to the doctor's care, the fact of custody would be clear. We cannot avoid reaching the same conclusion simply because those words, implied by all the circumstances, were not actually spoken.

The county also contends on this issue that the medical center should be bound by the determination in Lopez's subsequent criminal case, where he was not given credit against his sentence for the time spent in the hospital. This determined, it argues, that he was not in custody during that time. It seeks to invoke the doctrine of collateral estoppel, citing *Goetz v. Board of Trustees,* 203 Kan. 340, 454 P.2d 481 (1969), for the proposition that an issue once litigated may not be relitigated by the parties or their privies. The problem is that neither party to this suit was a party to the state's prosecution of Lopez, and neither is in privity with either party. We hold the doctrine of collateral estoppel inapplicable.

Finally, the county says the medical center didn't show that SRS wouldn't have paid its bill, and therefore didn't establish that "no other source of funds is available" as required by *Mt. Carmel.* We think resort to SRS was not required. Lopez was concededly indigent. An indigent may, however, have other resources available. Children, for example, may be indigent and yet have parents with both an obligation and the ability to defray medical expenses. Or the indigent, child or adult, may have medical insurance or a claim against a tortfeasor. Lopez apparently has a right to medical treatment from the Veterans Administration, lost only because his injuries were caused by gunshot. It was this type of source this court had in mind when it

limited the county's obligation to those cases where no other source of funds was available. The thought was, taxpayers of the county should not pay where the patient, with primary responsibility, has other resources.

Here, the only other resource the county points to is a state agency, also tax supported, with an obligation to supply certain services for certain citizens meeting certain standards of need. Whether it had any obligation to pay medical bills for Lopez does not appear. It was asserted and not disputed that SRS might have paid as much as one-third of the bill, but if it did so the medical center would have been precluded from seeking the balance from any other source. Whether this is so is irrelevant. The first public body with an obligation to pay for Lopez's care was the county, which requested it and which had the obligation to see that it was furnished.

Affirmed.