No. 57,546

The Wesley Medical Center, *Plaintiff-Appellee*, v. The City of Wichita, Kansas, *Defendant-Appellant*, and The Board of County Commissioners of The County of Sedgwick, Defendant/Appellee, and George E. Rainey, *Defendant*.

(703 P.2d 818)

Opinion filed July 26, 1985.

*Douglas J. Moshier*, assistant city attorney, argued the cause and was on the brief for appellant.

*Michael L. North*, of Boyer, Donaldson & Stewart, of Wichita, argued the cause and was on the brief for appellee, Wesley Medical Center.

*Edward L. Keeley*, of Crockett & Gripp, of Wichita, argued the cause and was on the brief for appellee, Board of County Commissioners of Sedgwick County.

The opinion of the court was delivered by

Prager, J.: This is an action brought by Wesley Medical Center of Wichita to recover the value of medical expenses furnished by that hospital to George E. Rainey following a gun battle and Rainey's subsequent arrest by Wichita police officers. The defendants in the case were George E. Rainey, the City of Wichita, the Board of County Commissioners of Sedgwick County, and the Board of County Commissioners of Butler County. The district court found that Butler County was not

liable for the medical services, and that judgment is not questioned on this appeal.

The controversy in the trial court and on this appeal is whether the City of Wichita or Sedgwick County is liable to Wesley Medical Center for the medical services it provided George E. Rainey. The case was submitted to the trial court on a stipulation of facts which may be summarized as follows: On July 11, 1981, in Butler County, the defendant, George E. Rainey, shot and killed a highway patrolman who had stopped him on the Kansas Turnpike. Rainey continued south on the turnpike and got off at the east Wichita exit. Word of the shooting reached the Wichita police before Rainey's arrival in Wichita. Shortly after entering the city limits, Rainey was stopped by Wichita police officers and a gun battle resulted. In the course of the gun battle, Rainey was seriously wounded. At the instance of the Wichita officers, an ambulance was dispatched to the scene. The emergency medical personnel on the ambulance then determined that Rainey would be transported to Wesley Medical Center for treatment of his wounds. On the trip to the hospital and for six days thereafter, until July 17, 1981, Rainey was under guard by Wichita police officers.

Defendant Rainey was charged with attempted first-degree murder in Sedgwick County. His first appearance before a magistrate in Sedgwick County took place on July 17, 1981, at the hospital. Rainey was guarded in the hospital by officers of the Sedgwick County sheriff's department from July 17, 1981, until July 31, 1981. Rainey was also under guard at times during that period by officers of the Butler County sheriff's department. On July 31, 1981, Rainey was released from the hospital and transferred to the Sedgwick County jail. After approximately one hour in the jail, he was released to the custody of the Butler County sheriff and taken to Butler County and jailed. Subsequently, he was arraigned, stood trial, and was convicted of the murder of a state highway patrolman. Rainey was returned to the Sedgwick County jail on December 29, 1981, for disposition of the felony charges pending against him in Sedgwick County District Court. These matters were concluded and he was sent to the Kansas State Penitentiary on January 12, 1982. It was undisputed that defendant Rainey was an indigent within the meaning of K.S.A. 22-4501 *et seq.* The claim for medical treatment supplied to

defendant Rainey by Wesley Medical Center from July 11, 1981, to July 31, 1981, amounted to $19,071.66.

On February 5, 1982, Wesley Medical Center filed this action against Rainey, Butler County, and Sedgwick County. After discovery and several hearings, Wesley Medical Center moved for leave to add the City of Wichita as a party defendant, which motion was granted. The basic dispute in the case was whether the City of Wichita or Sedgwick County was responsible for Rainey's medical expenses. On August 23, 1984, the case proceeded to trial upon facts stipulated or admitted by all the parties involved. The trial court held that the City of Wichita was liable for Rainey's medical expenses from July 11, 1981, to July 17, 1981, during which period Rainey was under guard by the Wichita police. The trial court held that Sedgwick County was liable for the medical expenses from July 17, 1981, to July 31, 1981, during which period Rainey was under guard by the Sedgwick County sheriff's office. The City of Wichita appealed and the case was transferred to the Supreme Court. Wesley Medical Center filed a cross-appeal.

The basic issue presented in the case is this: Is a city responsible for the payment of medical expenses incurred by an indigent person who is arrested by city police and subsequently charged with and convicted of a violation of state law, who before being physically transported to the county jail, is taken to a hospital for necessary medical treatment?

Before considering the specific issue presented, it would be helpful to review some of the basic legal principles which are applicable where a person, who is arrested by law enforcement officers or confined in a jail, requires medical services. It has long been the statutory law of Kansas that it is the duty of all keepers of jails and prisons to treat their prisoners with humanity. K.S.A. 19-1919, which specifically so provides, was enacted as a part of the General Statutes of 1868 in Chapter 53, Section 19. The later Kansas cases have consistently held that a prisoner's rights include entitlement to medical care at the governmental agency's expense, if the prisoner is indigent and no other source of funds is available. *Levier v. State*, 209 Kan. 442, 497 P.2d 265 (1972); *Pfannenstiel v. Doerfler*, 152 Kan. 479, 483, 105 P.2d 886 (1940); *Dodge City Med. Center v. Board of Gray County Comm'rs*, 6 Kan. App. 2d 731, 634 P.2d 163 (1981); *Mt.*

*Carmel Medical Center v. Board of County Commissioners*, 1 Kan. App. 2d 374, 566 P.2d 384 (1977). It should be noted that several earlier Kansas cases held that a county is not bound to pay a physician for medical services rendered by him to prisoners in the county jail unless such services are authorized by the county. *Hendricks v. Comm'rs of Chautauqua Co.*, 35 Kan. 483, 11 Pac. 450 (1886); *County of Smith v. County of Osborne*, 29 Kan. *72 (1882); *Roberts v. County of Pottawatomie*, 10 Kan. *29 (1872). The later cases, however, place a positive duty upon the county to furnish medical attention to a prisoner in custody who is in need of medical attention, if the prisoner is indigent and no other source of funds is available.

In *Mt. Carmel Medical Center v. Board of County Commissioners*, 1 Kan. App. 2d 374, a county prisoner, in an attempt to escape from jail, jumped out of an unlocked window and dropped four stories to the ground, causing him to break a leg. A neighbor heard his screams and called the Oswego police. The police arrived and called an ambulance. The ambulance, a doctor, and a sheriff's deputy arrived at the scene. The doctor recommended hospitalization where orthopedic care was available. The deputy sheriff concurred with the decision to send the escapee to the hospital where he was provided medical treatment. It was held that the fact that the injured man was an escaped man when he received treatment was not determinative of the sheriff's responsibility to provide medical attention. The determinative factor was whether he was *in custody* when the decision was made to transport him to the hospital. The county was held liable for the medical care provided.

*Dodge City Med. Center v. Board of Gray County Comm'rs*, 6 Kan. App. 2d 731, presents a factual situation comparable to that in the case now before us. In that case it was held that, where a suspect is apprehended in the commission of a felony, felled by an officer's gunshots, and taken to the hospital by the sheriff, the suspect is "in custody" while hospitalized, for the purpose of determining the county's liability for his medical expenses, even though he has not been formally arrested or kept under guard. In the present case, the City of Wichita and Sedgwick County agree that one of those two political subdivisions is responsible for the medical expenses incurred in the treatment of George E. Rainey. The dispute is over which entity is responsible for them.

In the state of Kansas, there are a number of cities that have no municipal jail facilities. It is quite customary for the city police of those cities to take city prisoners to the county jail for incarceration. For a number of years, this has been true in Sedgwick County where persons arrested by Wichita police officers are taken to the county jail. In 1963, the Kansas legislature enacted K.S.A. 19-1930, which provided for compensation to the county for the maintenance of United States prisoners and city prisoners held in county jails. The statute was later amended in 1981 and 1984 and now appears at K.S.A. 1984 Supp. 19-1930, which provides in part as follows:

"(a) The sheriff or the keeper of the jail in any county of the state shall receive all prisoners committed to the sheriff's or jailer's custody by the authority of the United States or by the authority of any city located in such county and shall keep them safely in the same manner as prisoners of the county until discharged in accordance with law. *The county maintaining such prisoners shall receive from the United States or such city compensation for the maintenance of such prisoners in an amount equal to that provided by the county for maintenance of county prisoners* and provision shall be made for the maintenance of such prisoners in the same manner as prisoners of the county. The governing body of any city committing prisoners to the county jail shall provide for the payment of such compensation upon receipt of a statement from the sheriff of such county as to the amount due therefor from such city.

"(b) The sheriff or the keeper of the jail in any county of the state shall receive all prisoners committed to the sheriff's or jailer's custody pursuant to K.S.A. 75-5217, and amendments thereto, and shall keep them safely in the same manner as prisoners of the county until discharged in accordance with law or until otherwise ordered by the secretary of corrections. *The cost of maintenance of such prisoners, including medical costs of such prisoners shall be paid by the department of corrections in an amount equal to that provided by the county for maintenance of county prisoners.*

"(c) In lieu of charging city authorities for the cost of maintenance of prisoners as provided by subsections (a) and (b), the board of county commissioners of Sedgwick county may levy a tax not to exceed 1 mill upon all tangible taxable property of the county to pay such costs and the costs of maintaining county prisoners. Any such levy shall not be subject to the provisions of K.S.A. 79-5001 et seq., and amendments thereto. No revenue derived from such levy shall be used to pay the costs of maintenance of prisoners committed to the jail by federal or state authorities, or authorities of other counties or cities in other counties. For the purpose of this subsection, if any portion of a city is located within a county levying a tax hereunder, all prisoners of such city shall be deemed prisoners of such county." (Emphasis supplied.)

It should be noted that under K.S.A. 1984 Supp. 19-1930(a) the sheriff or the keeper of the jail in any county is required to receive all prisoners committed by the authority of the United

States or by the authority of a city and to keep them as prisoners of the county. The county maintaining such prisoners is entitled to receive from the United States or such city compensation for the maintenance of such prisoners in an amount equal to that provided by the county for the maintenance of county prisoners. Section (b) was added by the 1981 legislature to cover situations where a county sheriff receives into his custody a person who has violated the conditions of his parole or conditional release and a warrant for his arrest has been issued by the secretary of corrections. The cost of maintenance of such prisoners is to be paid by the department of corrections. In 1984, the legislature enacted section (c) to authorize the board of county commissioners of Sedgwick County to levy a tax on all tangible property of the county to pay the costs of maintaining county prisoners and also prisoners of cities located within Sedgwick County, including the city of Wichita.

From time to time in the past, disputes have arisen as to which governmental subdivision is responsible for medical services provided a prisoner who is in the custody of the county. The attorney general of Kansas has held on three separate occasions that, under K.S.A. 19-1930, the cost of medical treatment provided a prisoner arrested for violation of a state statute is the responsibility of the county, and the cost of medical treatment provided a prisoner arrested for the violation of a local municipal ordinance is borne by the city. In this regard see attorney general opinions Nos. 77-286, 78-66, and 83-93. It appears that this is a case of first impression involving a controversy between a county and city as to which entity has the obligation to pay the medical expenses of a person who has been arrested by city police officers for violation of a state law but who was taken to a hospital before being delivered to county officers.

Simply stated, it is the position of Sedgwick County that a governmental entity is liable for the medical expenses of a person who is indigent and where no other source of funds is available, if the person is in the "custody" of that governmental entity's representatives. The county argues that, in the present case, the county sheriff never obtained custody of George E. Rainey until July 17, 1981, when the sheriff's deputies began guarding Rainey in the hospital. Sedgwick County maintains that, until a prisoner has been *physically* turned over to the

sheriff's custody or arraigned for state felony charges, the county has no responsibility or liability for any necessary medical expenses incurred on behalf of an indigent prisoner. Hence, the county maintains the trial court correctly held that the City of Wichita was responsible for Rainey's medical care from July 11, 1981, to July 17, 1981, during which period the city police officers were guarding the prisoner.

It is the position of the City of Wichita that a county should be held liable for the medical expenses provided a prisoner *is arrested for a violation of a state statute*, even though the prisoner was arrested by city police officers and taken directly to a hospital for medical care. Simply stated, it is the City's position that the obligation to pay medical expenses of an indigent prisoner depends upon whether the person has been arrested for a violation of state law or a violation of a city ordinance.

There are a number of cases from other jurisdictions where the issue has arisen and, although there is a split of authority, the majority of the cases hold that a county's liability for medical expenses furnished a prisoner should not depend on which governmental law enforcement agency happens to be called to the scene of the alleged crime or whether the prisoner is hospitalized before or after he is placed in the county jail. The important factor is whether the offender was arrested for a violation of a state law or for a violation of a municipal ordinance.

Two Oregon cases in point are *Bd. of Higher Educ. v. Wash. Co.*, 52 Or. App. 369, 629 P.2d 373, *rev. denied* 291 Or. 368 (1981); and *Rogue Valley Memorial Hosp. v. Jackson Cty.*, 52 Or. App. 357, 629 P.2d 377, *rev. denied* 291 Or. 368 (1981). Both of these cases hold, so long as an offender is arrested for violation of state law and in due course is ultimately delivered to a local correctional facility for confinement and trial, the medical expenses incurred as a consequence of and following his arrest, and until his transfer to the county facility, are chargeable to the county. A county's liability for charges and expenses for maintaining prisoners, including medical expenses, should not depend on which police agency is called to the scene of the alleged crime or whether such person is hospitalized before or after he is placed in the county jail. A similar result was reached in *St. Mary of Nazareth Hospital v. City of Chicago*, 29 Ill. App. 3d 511, 331 N.E.2d 142 (1975). An Illinois appellate court in a different

division criticized that opinion and held to the contrary in *Sisters of Third Order, Etc. v. Tazewell Cty.*, 122 Ill. App. 3d 605, 78 Ill. Dec. 230, 461 N.E.2d 1064 (1984), on the basis that the person was not charged with a state offense prior to or during hospitalization. That court held that the charging of the patient *while hospitalized* is the catalyst which results in the liability of the county for incurred medical expenses.

Another case in point is *Washington Township Hosp. Dist. v. County of Alameda*, 263 Cal. App. 2d 272, 69 Cal. Rptr. 442 (1968), where a California appellate court held that where a prisoner is confined in the county jail after having been charged with or convicted of violating a state law or county ordinance, the expense of his care and maintenance must be paid by the county even though the prisoner may have been arrested by a city police officer and temporarily confined in the city jail. In *City of Plantation v. Humana, Inc.*, 429 So. 2d 37 (Fla. Dist. App. 1983), it was held that a city was not liable for the medical expenses of a prisoner because there was no showing of statutory authority establishing such liability or a showing of a contractual relationshp or implied promise to pay by the city, even though the prisoner was arrested and charged with a violation of Florida state statutes.

There are a number of Kansas statutes which indicate a legislative policy that the liability for care and maintenance of a prisoner, including medical expenses, should be the responsibility of the governmental entity, the violation of whose criminal statutes was the basis for the arrest. As noted heretofore, K.S.A. 1984 Supp. 19-1930 clearly expresses a legislative policy that the cost of maintenance of a prisoner in a county jail who was taken into custody under the authority of the United States should be paid by the United States government, while the cost of maintenance of a prisoner arrested and taken into custody under the authority of a city should be paid by the city. Likewise, the cost of maintenance, including medical costs, of a prisoner delivered to a county jail under the authority of the secretary of corrections for a parole violation should be paid by the department of corrections.

Other Kansas statutes express a similar legislative policy. K.S.A. 19-1916 governs situations where a prisoner who is charged with crime in one county is placed in the physical

custody of the jailer of another county. That statute authorizes a judge of a county in which there is no sufficient jail to order a prisoner confined in the jail of the nearest county having a sufficient jail. The sheriff of the county having the jail is required to receive and keep in his custody such a prisoner "at the expense of the county from which such person was sent." Another example is K.S.A. 19-1917, which provides that any county jail may be used for the safekeeping of any fugitive from justice from another state, and the jailer shall be entitled to reasonable compensation for the support and custody of such fugitive from justice, *to be paid by the officer demanding the custody of the same.* Thus, the legislative policy is again expressed that the cost of maintenance of a prisoner, including medical expenses, should not be placed upon the county whose jail has physical custody of the prisoner, but on the governmental entity whose laws have been violated and under whose authority the person is actually being held as a prisoner.

After carefully considering all of the above authorities and the arguments of counsel who have briefed their respective positions in a highly professional manner, we have concluded that a city is not responsible for the payment of medical expenses incurred by an indigent person who is arrested by city police and subsequently charged with a violation of state law and who, before being physically transferred to the county jail, is taken to a hospital for necessary medical treatment. We hold that so long as an offender is arrested for violation of a state law and in due course is charged with a state crime and delivered to the county jail for confinement, the medical and other incidental expenses incurred as a consequence of and following his arrest, and until his transfer to such facility, are chargeable to the county. We further hold that a county's liability for charges and expenses for safekeeping and maintenance of the prisoner, including medical expenses, does not depend on which police agency happens to be called to the scene of the alleged crime or whether such expenses were incurred before or after he is placed in a county jail. The controlling factor is that the prisoner was arrested and subsequently charged with violation of a state law. Thus, under the factual circumstances present in this case, the obligation to pay the medical expenses involved here is that of Sedgwick

County and not the City of Wichita. The judgment of the trial court holding to the contrary must be reversed.

We note that in the brief filed by Sedgwick County it is stated there is a factual dispute as to the reasonable value of the medical expenses furnished by Wesley Medical Center during the period from July 11, 1981, to July 17, 1981. The county maintains that it did not admit the amount and reasonableness of the medical charges claimed by Wesley Medical Center for that period. Because there may be an issue of fact in that regard, the case must be remanded to the trial court to determine that issue.

As noted earlier, a cross-appeal was taken by Wesley Medical Center in which it is claimed that Wesley Medical Center's petition states a cause of action against the City on the theory of express or implied contract. We have examined the record in this case and concluded that there is no evidentiary basis in the record to show that the City of Wichita's agents ever expressly or impliedly agreed to pay for the medical expenses of George E. Rainey. For this reason, the plaintiff's cross-appeal is denied.

The judgment of the district court is reversed on the appeal and the case is remanded to the district court with directions to determine any remaining issues as to the reasonableness of the charges for medical services provided by the plaintiff. The cross-appeal of the Wesley Medical Center is denied.