sel's mystical theory for defending a first degree murder charge.

858 P.2d 760

**ST. ALPHONSUS REGIONAL MEDICAL CENTER, LTD., Plaintiff–Appellant–Cross Respondent,**

v.

**Vaughn KILLEEN, Sheriff of Ada County, Idaho; The Board of Commissioners of Ada County, Idaho; and Ada County, Idaho, Defendants–Respondents–Cross Appellants.**

**No. 19311.**

Court of Appeals of Idaho.

April 6, 1992.

Hall, Farley, Oberrecht & Blanton, Boise, for appellant. Phillip S. Oberrecht argued, Boise.

Greg Bower, Ada Co. Atty., Susan D. Thomas, Deputy Ada Co. Atty., Boise, for respondents. Susan D. Thomas argued, Boise.

WALTERS, Chief Judge.

This case concerns the recovery of costs incurred by a private hospital in providing emergency medical care to an indigent pretrial detainee in the custody of a county sheriff. A magistrate determined that the county was liable for the costs incurred before the detainee was released from county custody, although the release occurred while the detainee was still hospitalized. Accordingly, the magistrate granted judgment to the hospital for part of its claim. On appeal, the district court af-

firmed. The hospital has appealed from the district court's order, arguing that it is entitled to recover all of its costs, not just the portion incurred before the detainee was released from custody. The sheriff and the county have cross-appealed, contending that neither the sheriff nor the county should be liable for any of the hospital's claim. We hold that the hospital's claim in this case is controlled by Idaho's statutory provisions for the payment of services rendered to medically indigent patients and we reverse the magistrate's judgment.

### Facts and Procedural Background

Mrs. Marjorie Edmonds was arrested, pursuant to a warrant, for writing a bad check in Ada County and then failing to appear at her preliminary hearing. The arrest occurred in Canyon County, Mrs. Edmonds' county of residence. She was then delivered to Ada County authorities who booked her into the Ada County jail on Friday, September 23, 1988.

Mrs. Edmonds had a history of heart problems. Early Sunday morning, September 25, she suffered chest pains and shortness of breath. Paramedics were called and, at approximately 4:08 a.m., transported her to the nearest hospital, St. Alphonsus Regional Medical Center (St. Alphonsus). An Ada County Deputy Sheriff followed. No prior arrangements existed between the hospital, the sheriff or Ada County for the treatment of prisoners. No one from Ada County signed an admissions form at the hospital and there is no indication that the sheriff's office chose St. Alphonsus.

Upon examination, a doctor at St. Alphonsus determined, at 5:38 a.m., that Mrs. Edmonds should be admitted for observation. After learning this, the sheriff's office contacted a deputy prosecuting attorney, who in turn spoke with an Ada County magistrate and persuaded the magistrate to enter a hand-written order releasing Mrs. Edmonds on her own recognizance. Mrs. Edmonds was released from the sher-

iff's custody at 7:45 a.m., while still a patient at the hospital. The record does not indicate how or when she or St. Alphonsus was notified of that release. Ultimately, she was discharged from the hospital's care on Tuesday, September 27, 1988. The total bill for her treatment was $1,852.22, of which $1,035.40 was incurred before her release from county custody.

St. Alphonsus sought payment from the Ada County Sheriff and Ada County for the total cost of Mrs. Edmonds' treatment. At the same time, the hospital asserted that Mrs. Edmonds was medically indigent and submitted claims to both Ada and Canyon counties under state statutes covering payment for medical services for indigents. Both claims were denied.[1] Specifically, Canyon County denied the claim on the basis that Ada County or its sheriff should pay. When the sheriff refused, St. Alphonsus sued the Ada County Sheriff, the Ada County Board of Commissioners, and Ada County (collectively "Ada County"). Ada County denied liability, asserting that Canyon County, Mrs. Edmonds' county of residence, was responsible for the costs. Even though it has a direct interest in the outcome, Canyon County has not been made a party to the lawsuit.

Both St. Alphonsus and Ada County moved for summary judgment. The hospital argued that Ada County was responsible for the entire amount of Mrs. Edmonds' bill. Ada County, on the other hand, argued that Canyon County, Mrs. Edmonds' county of residence, should pay. The magistrate granted the motion in favor of St. Alphonsus and awarded $1,035.40 for the services performed before Mrs. Edmonds' release from custody, plus prejudgment interest from October 9, 1989, at a rate of twelve per cent, and attorney fees. The magistrate determined that Ada County had a statutory duty to provide treatment and also to pay for it; and that the sheriff had entered into an implied agreement with St. Alphonsus to pay for Mrs. Edmonds' treatment. The court expressly found, however, that there was no basis for coun-

1. At oral argument on this appeal, we were advised by the parties that the hospital had filed

motions for reconsideration of the denials of its claims, which motions remained pending.

ty liability after Mrs. Edmonds was released on her own recognizance.

Both parties appealed to the district court, which affirmed the magistrate's decision. However, the court held that Ada County had only a statutory duty to pay for the medical services provided to an indigent pretrial detainee. The court limited recovery to the portion of Mrs. Edmonds' bill attributed to her treatment before her release from custody. It found no liability for the remainder of the bill, finding no implied contract, quasi-contract, or quasi-estoppel basis for total recovery. The court also affirmed the award of prejudgment interest and attorney fees. Both parties appeal to this Court, asserting the same positions they took below.

### Question Presented

Is a county sheriff responsible for payment of all or part of the emergency medical services provided by a private hospital to a non-resident, indigent, pretrial detainee who suffers an illness while in the sheriff's custody?

### Standard of Review

The facts in this case are uncontroverted. The issue to be resolved involves the disputed application of state statutes. The construction and application of legislative enactments present pure questions of law over which we exercise free review. *Standards of Appellate Review in State and Federal Courts*, IDAHO APPELLATE HANDBOOK § 3.2.1 (Idaho Law Foundation, Inc. 2d ed. 1989).

### Duty to Provide Care

■ Initially, we point out that the dispute is solely over who will pay for the costs of Mrs. Edmonds' medical services, and concerns only state law. The eighth amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, mandates that injured persons in custody receive necessary medical care. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). However:

the Constitution does not dictate how the cost of that care should be allocated as between the [governmental] entity and the provider of the care. That is a matter of state law.

If, of course, the governmental entity can obtain medical care needed for a detainee only by paying for it, then it must pay. There are, however, other means by which the entity could meet its obligation. Many hospitals are subject to federal or state laws that require them to provide care to indigents. [Citations omitted.]

*Revere*, 463 U.S. at 245, 103 S.Ct. at 2983. This language implies that a governmental entity such as Ada County may not be responsible for the costs of medical care to indigent detainees if the Idaho statutes governing payment for medical services provided to indigents apply. These statutes can only be analyzed in conjunction with our statutes defining the responsibilities of the county sheriff. Unfortunately, there is a void when the two sets of statutes are viewed together. On the one hand, the statutes governing the responsibilities of county sheriffs do not address who pays for medical services provided to prisoners, no matter if the prisoner is indigent or solvent. On the other hand, the medical indigency statutes do not distinguish between non-incarcerated indigents and those who are incarcerated.

### Statutory Duties of the Sheriff

■ First, we consider the statutes governing the responsibilities of a county sheriff. Idaho Code § 31–2202(6) provides that a sheriff has a duty to "[t]ake charge of and keep the county jail and prisoners therein." Section 20–612 states:

The sheriff must receive all persons committed to the jail by competent authority. It shall be the duty of the board of county commissioners to furnish all persons committed to the county jail with necessary food, clothing and bedding, and the [board] is authorized to pay therefor out of the county treasury....

Included as county charges are "[t]he expenses necessarily incurred in the support of persons charged with or convicted of crime and committed therefor to the county jail." I.C. § 31–3302(3). "Support" is not defined.

St. Alphonsus argues that medical expenses of prisoners are expenses necessarily incurred in support of persons committed to the county jail so as to constitute a county charge with the meaning of section 31–3302(3). The district court agreed, relying on the definition of "support" provided in Black's Law Dictionary, which states that "support" includes "anything requisite to housing, feeding, clothing, health, ... proper care, nursing and medical attendance in sickness...." Black's Law Dictionary, p. 1439 (6th ed. 1990). The district court analogized to Idaho's child support statute, which defines the "duty of support" to include:

> The costs of necessary food, clothing, shelter, education, and health care. The duty includes any obligation to make monetary payment, to pay expenses or to reimburse another person or agency for the cost of necessary support furnished a dependent child.

We do not find this analogy persuasive. The definition establishes that a parent must pay for the medical care of a child. However, it does not prohibit the parent, as caretaker, from looking to an insurer for the child's covered medical expenses. Applied to the facts at hand, St. Alphonsus' interpretation of this section would prevent Ada County, as jailer and caretaker, from requiring a solvent prisoner or his insurer to pay for his own medical care. In Idaho, if a person is indigent, the person's county of residence assumes the role of insurer for emergency medical care. As will be seen, there is nothing in the statute that indicates a county's role as insurer for indigents should change when the person becomes a prisoner of another county's sheriff. The interpretation presented by St. Alphonsus would have this Court impose such a change.

■ St. Alphonsus also urges application of I.C. § 20–605, the only statute specifical-

ly addressing medical care in jails. Unfortunately, that statute does so only in the context of when a person is jailed in a county that is not the county where the person was charged with a crime. Section 20–605 provides that the charging county "shall pay all direct and indirect costs of the detention or confinement of the person to be confined." The costs are to be determined on a per day per person basis by agreement between the county where the court entered the order of confinement and the county owning or operating the jail in which the person is actually confined. *Id.* In the absence of an agreement fixing costs, the charge is fixed at a statutory *per diem* amount,

> plus the actual costs of any medical or dental services; provided, however, that the county may determine whether the detained or confined person is eligible for any local, state, federal or private program that covers dental, medical and/or burial expenses. That person will be required to apply for those benefits, and any such benefits obtained may be applied to the detained or confined person's incurred expenses, . . . .

I.C. § 20–605. St. Alphonsus argues that, by analogy, this section requires Ada County to pay Mrs. Edmonds' bill and "demonstrates the legislature's intent to allocate the burden of payment of an indigent prisoner's medical expenses to the county." However, as Ada County points out, the section also establishes the legislative intent that the charging county should look to any local, state, federal, or private programs that may provide insurance or payment. Put another way, the intent is that the jail should not have to pay for a prisoner's medical care if the prisoner is entitled to benefits outside of the corrections system. In this case, those benefits are created in the medical indigency statutes.

### Medical Indigency Statutes

■ At this point, it is appropriate to consider the statutes which impose responsibility on counties for the costs of medical care provided to indigents. Idaho Code § 31–3501 provides that the counties of res-

idence are obligated to provide for the payment of care and hospitalization of resident indigents. A medically indigent person is defined as one who does not have sufficient income or other resources available to pay for necessary medical services. I.C. § 31–3502(1). The services covered by county payment include emergency medical services. I.C. § 31–3407. The appropriate county responsible for payment of an indigent's medical bill is described in § 31–3506, which states in part:

> (2) The obligated county for payment for individuals institutionalized in a residential care home, nursing home, hospital, or other medical facility, shall be as follows:
>
> (a) The last county in which the applicant or head of household has maintained a residence for six (6) consecutive months or longer within the past five (5) years preceding application shall be obligated.
>
> (c) ... being admitted as a patient in a hospital, residential care home, nursing home, other medical facility or institution, shall not change the obligated county. The county obligated shall remain the same county that would have been obligated prior to institutionalization as above described.

I.C. § 31–3506(2)(c). In the instant case, the parties have not disputed that Mrs. Edmonds was indigent. Also, it is agreed that her admission to St. Alphonsus was an emergency. The record indicates further that she has lived in Canyon County for the last twenty years and thus is a resident there. In such a situation, I.C. § 31–3407 applies. That section states:

> A claim against the county shall be allowed for services rendered ... where a hospital renders the services to a medically indigent person in an emergency.... Such services shall be paid for by the county of residence of the sick or otherwise indigent person.

I.C. § 31–3407. Under the circumstances of this case, these statutes indicate that Canyon County—Mrs. Edmonds' county of residence—and not Ada County, is responsible for her hospital bills.

### What Other States Have Done

Because there is no Idaho case law controlling on this subject, we have considered the approaches taken by other states, for guidance. Many cases present the issue of whether a county and its sheriff, as opposed to a hospital, are responsible for the payment of medical services provided to prisoners. Unfortunately, none of the cases found address this issue when there is a countervailing state law providing that an indigent's county of residence, without regard to whether the indigent is incarcerated, should pay for the services. Still, it is helpful to view what other states have done generally.

In *Harrison Memorial Hospital v. Kitsap County*, 103 Wash.2d 887, 700 P.2d 732 (1985), the Washington Supreme Court interpreted state statutes specifically addressing payment for medical services and concluded that counties were the governing unit statutorily obligated to pay for the emergency health care of those in custody. The counties could seek reimbursement from the prisoner or from the State Department of Social and Health Services' public assistance medical program, or from any insurance or medical benefit program available to the prisoner.

In *Mercy Medical Center, Inc. v. Douglas County*, 28 Or.App. 557, 559 P.2d 1286 (1977), the appellate court found that Oregon statutes specifically established that medical expenses of prisoners would be paid by the respondent county. Statutory liability extended to the total cost of hospitalization where the physical circumstance—paralysis—implied that the prisoner was in the sheriff's custody, even though "some of the procedural niceties of formal custody may not have been observed." 559 P.2d at 1287.

In *Hospital Services, Inc. v. Dumas*, 297 N.W.2d 320 (N.D.1980), the North Dakota Supreme Court found that county liability for medical services given to prisoners was established where the county court, under statutory authority, had imposed a rule providing that the cost of medical care given to prisoners would be paid by the governmental agency committing the prisoner.

In Florida, payment for a prisoner's medical care is the prisoner's personal responsibility, unless he is indigent, in which case state statutes provide that the county is liable. *Metropolitan Dade County v. P.L. Dodge Foundations, Inc.*, 509 So.2d 1170 (Fla.Dist.Ct.App.1987). *See also City of Fort Myers v. Hospital Board of Dir. of Lee County*, 505 So.2d 590 (Fla.Dist.Ct.App.1987) (hospital could seek payment for services rendered to prisoners of sheriff's deputy, unless there was a showing that the prisoner had insurance or could pay for his own treatment; state statute specifically put responsibility for payment of medical care on county). However, a county sheriff has been held responsible for payment of medical services provided to a prisoner even without statutory obligation when there was found an implied duty for the sheriff to pay. *Hospital Board of Directors v. Durkis*, 426 So.2d 50 (Fla.Dist.Ct.App.1982). Similar conclusions have been reached in Nebraska, Indiana, and New Jersey. *See Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 429 N.W.2d 347 (1988) (state statute required only that care be provided, however, city was obligated under implied contract theory to pay for the treatment of prisoners, based on the special relationship between the custodian and the prisoner); *Health and Hospital Corp. of Marion County v. Marion County*, 470 N.E.2d 1348 (Ind.App.1984) (sheriff was obligated, under implied contract theory, to pay for medical services for inmates not shown to be indigent because the sheriff had a duty to provide care, the hospital had no duty to gratuitously provide services, and the sheriff's expenses possibly could be reimbursed by other government agencies); *St. Barnabas Medical Center v. County of Essex*, 111 N.J. 67, 543 A.2d 34 (1988) (county was responsible for indigent inmate's medical care based on a quasi-contract/unjust enrichment theory).

However, an opposing conclusion was reached in *Plantation v. Humana, Inc.*, 429 So.2d 37 (Fla.Dist.Ct.App.1983) *superceded by statute, Metropolitan Dade County v. P.L. Dodge Foundations, Inc., supra*. In *Plantation*, the Florida appellate court found that where the state statutes are not specific and no express contractual relationship is found between the county and the hospital, no county liability exists. Thus, the city police responsible for the prisoner were not liable for the prisoner's hospital bill simply by virtue of his status as a prisoner.

In Kansas, state statutes and common law establish that the county having custody of a prisoner is primarily liable for medical care expenses only if the prisoner is found to be indigent and no other source of funds is available, otherwise the prisoner is liable. *Susan B. Allen Memorial Hospital v. Board of County Commissioners of Butler County*, 12 Kan.App.2d 680, 753 P.2d 1302 (1988); *Dodge City Medical Center v. Board of County Commissioners*, 6 Kan.App.2d 731, 634 P.2d 163 (1981); *Mt. Carmel Medical Center v. Board of County Commissioners*, 1 Kan.App.2d 374, 566 P.2d 384 (1977).

The common thread that runs through these cases is that if a prisoner is solvent, the custodial entity may look to the prisoner or his insurer for payment of medical services. If indigent, the county or city may be responsible for the bill, unless there is an alternative mechanism for payment either directly or by reimbursement to the county or city.

### Medical Indigency Statutes Apply

It is a fundamental rule that sections of applicable statutes must be read together to determine the legislature's intent. *County of Bannock v. City of Pocatello*, 110 Idaho 292, 715 P.2d 962 (1986). Statutes relating to the same subject matter are to be construed together to determine the intent of the legislature. *E.g., Union Pacific Railroad Co. v. Board of Tax Appeals*, 103 Idaho 808, 654 P.2d 901 (1982). Statutory language should be given its plain, obvious and rational meaning in the absence of legislative intent to the contrary. *See e.g., State ex rel. Evans v. Click*, 102 Idaho 443, 631 P.2d 614 (1981), *cert. denied* 457 U.S. 1116, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982).

With these rules in mind, we conclude that the governing statutes are those relating to medical care for indigents. The statutes addressing the duties of the county sheriff provide no direction as to who should pay for the medical services provided to indigent pretrial detainees. Other statutes can be applied only in strained analogy. The medical indigency laws directly address payment for medical services to indigents. They do not distinguish between civilian and incarcerated indigents, but instead speak broadly in terms of residence. In this case, Mrs. Edmonds' residence was in Canyon County. Her incarceration in the Ada County jail did not change that fact.

If a non-indigent prisoner suffered a heart attack in jail, that prisoner would be liable for the bill, not the sheriff. Either the person's own funds would be sought, or those from his or her insurer. By statute, Idaho counties essentially assume the role of insurer for emergency medical services provided to resident indigents. Mrs. Edmonds falls squarely within that category. The knowing and voluntary acceptance of the benefits of medical services creates an implied promise on the part of the recipient to pay for those services. *Metropolitan Dade County v. P.L. Dodge Foundations, Inc., supra,* 509 So.2d 1170. One's status as a prisoner does not change this rule. *Id.* Here, Mrs. Edmonds received treatment, not Ada County, and the first recourse would be to seek payment from her or her insurer. If she is indigent, the preferred rule is to abide by the statutory mechanism already in place to provide payment in such situations. In other words, the preferred policy is to abide by the medical indigency statutes.

The record is devoid of information as to what the County and the hospital may have done in the past when and if similar situations arose. However, it is this Court's view that to thrust the costs onto the county sheriff would impose an unprecedented, and unprepared for, burden on that office. Extending existing statutes to impose such a burden is not a proper exercise of this

Court's power. It is a matter we leave for the legislature.

Because we determine there is a statutory basis for not holding Ada County liable to the hospital, we decline to hold that there is any implied contractual or estoppel basis for imposing liability.

Conclusion

In summary, Ada County is not responsible, by statute or implied contract, for payment of emergency medical services provided by St. Alphonsus, a private hospital, to a non-resident, indigent, pretrial detainee who has suffered an illness while in the custody of the county sheriff.[2] Responsibility for payment falls within the terms of the medical indigency laws, which imposes liability upon the detainee's county of residence.

The judgment of the magistrate and the appellate decision of the district court holding the respondents liable for the appellant's services are reversed. Costs to respondents; no attorney fees awarded on appeal.

SWANSTROM and SILAK, JJ., concur.

---

**2.** Our holding is limited to the pretrial detainee situation.