(9 P.3d 588)
No. 84,442

HASKELL COUNTY, KANSAS, and the HASKELL COUNTY COMMISSIONERS, *Appellants,* v. DAVID K. SULLIVAN, *Appellee.*

Opinion filed July 28, 2000.

*Nels P. Noel,* of Sublette, for appellant.

*Wayne R. Tate,* of Sharp, McQueen, McKinley, Dreiling & Tate, P.A., of Hugoton, for appellee.

Before BRAZIL, C.J., ELLIOTT, J., and PADDOCK, S.J.

BRAZIL, C.J.: Haskell County, Kansas, and the Haskell County Commissioners (together as the County) filed this action against David K. Sullivan seeking reimbursement for the cost of medical care Sullivan received while incarcerated. The County appeals from the decision of the trial court denying its request for reimbursement.

We affirm.

The County's claim for reimbursement was submitted to the trial court on stipulated facts.

After experiencing chest pains and difficulty breathing, Sullivan was diagnosed with pneumonia. He underwent surgery and was hospitalized for 18 days. Sullivan was unable to pay for his medical treatment, having no source of income. It was agreed he was indigent. The County paid a total of $46,780.59 for the medical serv-

ices. Because of the high cost of Sullivan's medical bills and maintenance, the County obtained his early release from jail. Sullivan served less than 4 months of his sentence.

The trial court ruled the County was not entitled to seek reimbursement from Sullivan. In doing so it stated: "Without a contractual relationship existing between the parties, without a statute authorizing the reimbursement of medical expenses, the Plaintiff in this case simply has no basis for its cause of action against this Defendant."

We have de novo review of cases decided on the basis of stipulated facts. See *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 31, 744 P.2d 840 (1987).

K.S.A. 19-1910(a) states: "When a prisoner is committed to a county jail in a criminal action, the board of county commissioners shall allow the sheriff reasonable charges for maintaining such prisoner." Under K.S.A. 19-4444, costs incurred by a county law enforcement agency or department for medical care and treatment of prisoners held within the county "shall be paid from the county general fund when a determination has been made that the prisoner has no other resources."

Kansas courts have consistently held that a prisoner's rights include entitlement to medical care at the expense of the appropriate governmental agency if the prisoner is indigent and no other source of funds is available. *Wesley Med. Center v. City of Wichita*, 237 Kan. 807, 809, 703 P.2d 818 (1985); *Allen Memorial Hosp. v. Board of Butler County Comm'rs*, 12 Kan. App. 2d 680, 681-82, 753 P.2d 1302 (1988). The legislature has expressed a policy that the liability for care and maintenance of a prisoner, including medical expenses, should be the responsibility of the governmental entity whose criminal statutes the prisoner allegedly violated. *Wesley Med. Center*, 237 Kan. at 814-15 (citing K.S.A. 19-1916, K.S.A. 19-1917, and K.S.A. 19-1930).

In *Dodge City Med. Center v. Board of Gray County Comm'rs*, 6 Kan. App. 2d 731, 634 P.2d 163 (1981), Russell Lopez was shot by a Gray County deputy sheriff while committing a burglary and was subsequently hospitalized. The trial court found Lopez was in the custody of the sheriff while hospitalized, that he was indigent,

and that there was no other source of funds available for his treatment. Gray County was charged with the costs of Lopez' medical care. On appeal, Gray County conceded Lopez was indigent but contested the finding of custody and the unavailability of other funds. It argued the medical center that had provided the medical services was required to show no other source of funds was available and to seek payment from the Secretary of Social and Rehabilitation Services (SRS). This court rejected Gray County's claim:

"We think resort to SRS was not required. Lopez was concededly indigent. An indigent may, however, have other resources available. Children, for example, may be indigent and yet have parents with both an obligation and the ability to defray medical expenses. Or the indigent, child or adult, may have medical insurance or a claim against a tortfeasor. Lopez apparently has a right to medical treatment from the Veterans Administration, lost only because his injuries were caused by gunshot. It was this type of source this court had in mind when it limited the county's obligation to those cases where no other source of funds was available. The thought was, taxpayers of the county should not pay where the patient, with primary responsibility, has other resources.

". . . The first public body with an obligation to pay for Lopez's care was the county, which requested it and which had the obligation to see that it was furnished." 6 Kan. App. 2d at 733-34.

The ruling in *Dodge City Med. Center* indicates a county has an obligation to pay for an indigent prisoner's medical expenses where the indigent has no other source of funds available to pay for the care. The ruling does not indicate a county has a right to seek reimbursement from the prisoner when the prisoner is no longer indigent or subsequently acquires other financial resources.

In *Weinlood v. Simmons*, 262 Kan. 259, 266, 936 P.2d 238 (1997), the Supreme Court held a regulation allowing the Secretary of Corrections to charge an inmate $1 a month for administering the inmate's trust account did not violate the inmate's due process rights. In doing so, it cited cases from several jurisdictions where courts have upheld a state's right to require inmates to reimburse the state for their keep and maintenance. 262 Kan. at 265. *Weinlood*, however, did not address whether a governmental agency had the right to seek reimbursement from a prisoner for maintenance or medical expenses without statutory authority.

The Attorney General of Kansas has concluded that, absent statutory authority, neither a district magistrate judge nor a municipal court judge may assess costs to a defendant for "room and board" associated with the defendant's confinement in city or county jail. The attorney general noted the State could initiate proceedings against a prisoner for reimbursement of expenses attributable to incarceration only where the legislature enacts a statute providing for such reimbursement. See Att'y Gen. Op. No. 84-25.

The Supreme Court has addressed a similar issue of whether a person committed to a state facility for the insane or the "feeble minded" is required to reimburse the State for his or her maintenance. See *State Department of Social Welfare v. Richards, Conservator*, 209 Kan. 403, 496 P.2d 1287 (1972); *In re Estate of Dotson*, 154 Kan. 562, 119 P.2d 518 (1941); *State v. Moore, Adm'r.*, 90 Kan. 751, 136 Pac. 233 (1913); *Kaiser v. State*, 80 Kan. 364, 102 Pac. 454 (1909). In each case, the court examined the legislative intent to permit the State or governmental agency to seek reimbursement from a patient for the cost of the care received in the state institution. In *Moore*, the State filed a claim against the estate of a decedent who had spent most of her life in a state youth home and a state insane asylum. The court stated:

"There is a conflict of judicial opinion as to whether the estate of an insane person, in the absence of a statute, is chargeable with the expense of his maintenance at a public institution. (*Kaiser v. The State*, 80 Kan. 364, 371, 102 Pac. 454, 24 L.R.A., n.s., 295; Note, Ann. Cas. 1913 A, 577.) In the Kansas case cited it was held in substance that whether a charge was to be exacted for the maintenance of an inmate of a public institution is a matter of policy, resting in the discretion of the legislature. . . .

". . . The question before us is not whether the inmates of this institution ought to be required to pay for their maintenance, but whether the legislature intended that they should." 90 Kan. at 752-54.

The legislature has adopted a policy that the liability for care and maintenance of a prisoner, including medical expenses, is the responsibility of the governmental entity whose laws have been violated and under whose authority the person is actually being held as a prisoner. See *Wesley Med. Center*, 237 Kan. at 814-15. The

legislature has not indicated a general policy that allows a county to seek reimbursement from prisoners for their care and mainte- nance. Rather, the legislature has limited recovery of care and maintenance costs to particular circumstances.

For example, K.S.A. 19-1930(d) contains a provision to help counties defray the cost of maintaining inmates in their jails. Under the statute, a county may adopt a resolution that any inmate who participates in a work release or job training program for which the inmate receives compensation or a subsistence allowance shall be required to pay to the county an amount not exceeding $10 per day. If expenses for the care and custody of a juvenile offender have been paid out of a county's general fund, the county may seek reimbursement of all or part of the expenses from a person who by law is liable to support the juvenile. K.S.A. 1999 Supp. 38-1616(b). A county holding a fugitive from another state may seek compensation for support and custody from the officer demanding custody of the fugitive. K.S.A. 19-1917. A county that receives a prisoner in its custody by the authority of the United States or any city located within the county is entitled to compensation for main- tenance from the United States or the city. K.S.A. 19-1930(a).

Further, if a county believes the medical expenses furnished by the medical provider are unreasonable, it may challenge the rea- sonableness of the charges. See *Wesley Med. Center*, 237 Kan. at 816.

The County asserts Sullivan has returned to work and it should be entitled to seek reimbursement since Sullivan may now have "other sources of income." Absent a statute relating to reimburse- ment, a governmental agency is not entitled to seek reimbursement from a prisoner for the cost of medical treatment received by the prisoner while in the agency's custody. When a determination has been made that the prisoner has no other resources, the prisoner's medical expenses must be paid from the county's general fund. K.S.A. 19-4444. In the event the prisoner has medical insurance or other benefits or resources at the time of treatment, the cost of the medical care may be defrayed by the applicable benefits. See *Dodge City Med. Center*, 6 Kan. App. 2d at 733-34.

Based on the stipulated facts, the County was properly charged as the agency responsible for Sullivan's medical expenses. The trial court properly denied the County's claim for reimbursement.

Affirmed.