No. 58,951

STATE OF KANSAS, *Appellee,* v. LEONARD R. LOUIS, SR., *Appellant.*
(727 P.2d 483)

Opinion filed October 31, 1986.

*Joseph D. Johnson,* of Topeka, argued the cause, and *Donna R. Asher,* of Topeka, was with him on the briefs for the appellant.

*Arthur R. Weiss,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Gene M. Olander,* district attorney, and *Ron Martinek,* legal intern, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal by the defendant, Leonard R. Louis, Sr., from convictions by the district judge sitting without a jury. The case was submitted to the court on stipulated evidence. The defendant was convicted on the following counts: Six counts

of aggravated vehicular homicide (K.S.A. 1984 Supp. 21-3405a); driving while under the influence of alcohol or drugs (K.S.A. 1984 Supp. 8-1567); failure to decrease speed (K.S.A. 8-1335); and failure to obey a traffic control device (K.S.A. 1984 Supp. 8-1508). The defendant was sentenced to six consecutive terms of one-to-five years for the aggravated vehicular homicide convictions and, after modification, six months for driving under the influence of alcohol to run concurrently with the other sentences. Defendant appealed his convictions and the sentences imposed thereon.

The facts in the case are essentially undisputed and are as follows: This criminal prosecution arose out of a tragic automobile accident which occurred at an intersection in the city of Topeka on May 15, 1985. The vehicle, driven by the defendant, collided with another vehicle occupied by two young mothers and their four young children. All of the occupants of the other vehicle were killed in the collision. The defendant sustained serious injuries and received emergency medical treatment at the scene of the accident before he was transferred to the emergency room at St. Francis Hospital. Defendant was the only occupant of his vehicle. The State's witnesses testified that defendant's vehicle was proceeding toward the intersection at a speed estimated at between 60 to 80 miles per hour. According to witnesses, defendant's vehicle ran a red light and crashed into the side of the other vehicle. Experts, who examined the vehicle and the physical facts at the scene, estimated defendant's speed to be 104 miles per hour. Within just a few minutes after the collision, officers of the Topeka Police Department arrived at the accident scene.

The injured defendant remained at the scene until the arrival of an ambulance which transported him to St. Francis Hospital escorted by a police vehicle. The officer in charge at the scene realized the necessity of obtaining a blood sample from the defendant to determine the amount of alcohol in his blood. A police officer was assigned to "sit" on the defendant and to keep track of his every move at the hospital. The officers at the hospital were instructed that defendant was not to leave the hospital without the officers' approval. Officer Owens, who followed the ambulance to the hospital in his patrol car, testified that he understood that it was his responsibility to maintain

custody over the defendant until he was released. He testified that had defendant attempted to leave the ambulance or the hospital, officers would have stopped any such action. While the defendant was in the emergency room at the hospital, three police officers of the Topeka Police Department maintained constant vigil over him. The officers testified that at all times until a determination was made that he would be admitted to St. Francis Hospital, defendant was in their custody and was in no way free to go. This was the understanding not only of the officers at the hospital but those at the scene of the accident. The officers at the scene of the accident testified that they perceived the odor of an alcoholic beverage coming from the defendant. It is clear that the statements of the witnesses made at the scene of the accident as to the speed of the defendant's automobile and that the defendant had run a red light, together with the odor of alcohol, gave the officers at the scene reasonable cause to believe that the defendant had been driving under the influence of alcohol.

In addition to the police officers at the scene, the Shawnee County Deputy District Coroner, Dr. Roman Hiszczynsky, was also present. The doctor contacted the hospital personnel to insure that a blood sample would be taken. Dr. Kathryn O'Keefe, the doctor on duty, received a call from the doctor asking her to have a blood sample and urine sample taken from the defendant at the time. She received the call after a blood sample had already been taken for the use of the hospital. The deputy coroner made it clear that he wanted a blood test and a urine test, and that, once the samples had been taken, a chain of evidence be established and the samples given to the police. Dr. O'Keefe clearly understood that the samples were for police evidence to determine if the defendant had been drinking alcohol or taking drugs. Dr. O'Keefe instructed Pat Hill, a registered nurse on duty that evening, that a blood alcohol test was to be taken for police purposes and that the sample was to be given to the police officers. Dr. O'Keefe examined the defendant in the emergency room, asking him several questions which required a "yes" response by squeezing her hand. This was necessary because the defendant had received an injury to his mouth. The doctor testified that defendant's answers were appropriate and that, medically, his condition was stable and there were no signs of

concussion. The doctor testified that, in her professional opinion, defendant understood all of the questions that she asked and knowingly responded thereto.

The blood sample was taken by Nurse Pat Hill. Prior to taking the blood, she asked defendant if he would consent for a blood sample to be taken "for police purposes." The defendant squeezed her hand indicating his consent to the taking of the blood. Nurse Hill testified that she believed that the defendant knew exactly what he was doing when he consented to the taking of the blood sample. Nurse Hill testified that she explained two or three times to the defendant the procedure so that he knew exactly what she was asking for and that the samples would be delivered to the police. The testimony was undisputed that, at all times prior to the time the blood test was taken while the defendant was held in the emergency room, police officers were present, and that the police officers remained near defendant at the hospital during the initial stages of his treatment, while the blood sample was taken, and until he was actually admitted to the hospital for surgery. The defendant was immediately taken into custody on an arrest warrant upon his discharge from the hospital.

The first issue raised by the defendant on the appeal is that the trial court erred in overruling defendant's motion to suppress the evidence of the defendant's blood test. It was stipulated that the blood test showed .13 alcohol concentration in the defendant's blood. After a full evidentiary hearing, the district court refused to suppress the blood test results, holding that the blood samples taken from the defendant in the emergency room of the hospital were taken while the defendant was in police custody pursuant to K.S.A. 8-1001, which at that time provided in pertinent part as follows:

"8-1001. Consent to submit to chemical test deemed given, when; authority to withdraw blood; administration of test; refusal admissible in evidence; procedure upon refusal to submit to test; notice; hearing; suspension of license, permit or operating privilege. (a) Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, to determine the alcoholic content of the person's blood *whenever the person is arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of alcohol* in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of alcohol. The test shall be administered at the direction of the arresting officer.

"(b) If a law enforcement officer requests the arrested person to submit to a chemical test of blood, the withdrawal of blood at the direction of the officer may be performed only by: (1) a person licensed to practice medicine and surgery or a person acting under the supervision of any such licensed person, (2) a registered nurse or a licensed practical nurse or (3) any qualified medical technician." (Emphasis supplied.)

In passing, it should be noted that that K.S.A. 8-1001 was amended by the 1985 legislature. K.S.A. 1985 Supp. 8-1001, now provides in part:

"8-1001. **Tests for alcohol or drugs; consent implied; administration of tests, when; procedures; immunity from liability; warning statement; search warrant, admissibility of test; availability of test result.** (a) Any person who operates or attempts to operate a motor vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. The testing deemed consented to herein shall include all quantitative and qualitative tests for alcohol and drugs. A person who is dead or unconscious shall be deemed not to have withdrawn the person's consent to such test or tests, which shall be administered in the manner provided by this section.

"(b) *The test* or tests deemed consented to under subsection (a) *shall be administered when a law enforcement officer has reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both, and one of the following conditions exists: (1) The person has been arrested or otherwise taken into custody* for any offense involving operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both, in violation of a state statute or a city ordinance; *or (2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death.* The law enforcement officer directing administration of the test or tests may act on personal knowledge or on the basis of the collective information available to law enforcement officers involved in the accident investigation or arrest.

"(c) If a law enforcement officer requests a person to submit to a test of blood under this section, the withdrawal of blood at the direction of the officer may be performed only by: (1) A person licensed to practice medicine and surgery or a person acting under the supervision of any such licensed person; (2) a registered nurse or a licensed practical nurse; or (3) any qualified medical technician. . . .

. . . .

"(2) It shall not be a defense to any prosecution for a violation of K.S.A. 8-1567 and amendments thereto, or to any other action arising out of the alleged operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both, that the person did not understand the written or oral notice required by this section because of any condition produced by the person's voluntary intoxication or by injury resulting from that intoxication." (Emphasis supplied.)

It should be noted that, under K.S.A. 8-1001 as it existed prior

to 1985, a blood sample may be taken *"whenever the person is arrested or otherwise taken into custody* for any offense involving operating a motor vehicle under the influence of alcohol in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of alcohol." The 1985 statute, in subsection (b), provides that the blood test shall be administered when a law enforcement officer has reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both, and one of the following conditions exists: (1) *The person has been arrested or otherwise taken into custody* for any offense involving operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs in violation of a state statute or city ordinance; *or (2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death.*

The basic issue presented on this point is whether or not the defendant was *under arrest or otherwise in custody* when the blood sample was taken from the defendant, because either an arrest or police custody is required under K.S.A. 8-1001. In *State v. Gordon,* 219 Kan. 643, 549 P.2d 886 (1976), this court held that K.S.A. 8-1001 becomes operative only after a person is arrested or *otherwise taken into custody.* K.S.A. 1985 Supp. 22-2202(4) defines the term "arrest" as follows:

"(4) 'Arrest' means the taking of a person into custody in order that the person may be forthcoming to answer for the commission of a crime. The giving of a notice to appear is not an arrest."

The term "custody" is defined in K.S.A. 1985 Supp. 22-2202(9) as follows:

"(9) 'Custody' means the restraint of a person pursuant to an arrest or the order of a court or magistrate."

In the present case, the parties agree that, at the time the blood sample was taken at the hospital, the defendant was not under arrest. The officers needed the evidence of the blood test in order to determine whether defendant was driving while under the influence of alcohol or drugs. The important issue is whether the defendant was "otherwise in custody" as required by K.S.A. 8-1001.

The term "custody" as defined by K.S.A. 1985 Supp. 22-

2202(9), which requires the restraint of a person "pursuant to an arrest or the order of a court or magistrate," has a narrower meaning than the word "custody" as used under the code of criminal procedure. In this case, the defendant was not in custody pursuant to an arrest or the order of a court or magistrate. We have concluded, however, that the narrow definition of "custody" set forth in 22-2202(9) is not applicable in interpreting the provisions of K.S.A. 8-1001(b). It should be noted that K.S.A. 22-2201(1) provides:

"**22-2201. Interpretation of words and phrases.** (1) In interpreting this code, such words and phrases as are defined in this article shall be given the meanings indicated by their definitions, *unless a particular context clearly requires a different meaning.*" (Emphasis supplied.)

In *State v. Brunner*, 211 Kan. 596, 507 P.2d 233 (1973), it was held that a person who has not been arrested is not in police custody *unless there are significant restraints on his freedom of movement which are imposed by some law enforcement agency.* *Brunner* further held that a police interview of an accident victim at a hospital is not "custodial interrogation " unless his confinement is police instigated or controlled for custodial purposes.

The term "custody" in its broad sense was considered in *State v. Bohanan*, 220 Kan. 121, 551 P.2d 828 (1976), where the court in Syllabus ¶ 2 stated:

"A person who has not been arrested is not in police custody unless there are significant restraints on his freedom of movement which are imposed by some law enforcement agency."

This definition of police custody was also recognized in *State v. Taylor*, 234 Kan. 401, 405, 673 P.2d 1140 (1983), and *State v. Costa*, 228 Kan. 308, 311, 613 P.2d 1359 (1980).

The test to be applied in this court in determining whether defendant was in custody at the time the blood sample was taken is whether at that time there were some significant restraints on his freedom of movement which were imposed by some law enforcement agency.

In support of the defendant's position, counsel for the defendant vigorously maintains that the defendant was not in the custody of the Topeka Police Department for several reasons. He argues that defendant was never advised by anyone that he was under arrest or police custody. Hospital personnel were never

specifically advised that defendant was in police custody or under arrest. A request for the blood sample was not made by an arresting officer but was made by Dr. O'Keefe and Nurse Hill. The defendant was not advised of his constitutional rights under *Miranda v. Arizona* prior to the blood sample being taken. Further, any restraints on defendant's freedom of movement resulted from his physical condition and were not instituted by any restraints imposed by law enforcement officers.

Counsel for the State takes the position that the defendant was in police custody at the time the blood sample was taken. He points out that the ambulance which took the defendant to the hospital emergency room was accompanied by Officer Owens in his police vehicle. It was undisputed that there were at all times two or three police officers with the defendant in the emergency room for a period of three or four hours. He was not free to leave the hospital without their consent. One officer testified that if the defendant had tried to leave he would have been prevented from doing so. He further testified that the officers understood they were not to leave the hospital until the defendant had agreed to surgery and was admitted to the hospital. The testimony of the witnesses was undisputed that Nurse Pat Hill asked the defendant for a sample of his blood *for police purposes*. Three uniformed police officers were standing by when that request was made. The officers all testified that the defendant was expressly told that this was *a police test* for alcohol or drugs in the defendant's blood. The three officers were present when the defendant responded by the squeezing of Nurse Hill's hand giving his consent for taking the sample of blood. The State further argues that upon defendant's release from the hospital he was immediately arrested on a warrant and taken to the police station.

The trial judge, after hearing all of the evidence and the highly professional arguments of able counsel, concluded that defendant Louis was in custody from the time he left the scene of the accident until he was admitted to the hospital for surgery after the blood samples had already been taken. The trial judge noted that defendant was transported to the hospital by ambulance accompanied by an officer in a police vehicle. Police officers remained at the hospital during the initial stages of his medical treatment and were present in the room when the blood sample

was taken. Nurse Hill testified that, "We believed that the defendant was in custody," although that was questioned by Dr. O'Keefe. After the defendant was admitted to the hospital for surgery, the police officers did not interfere until he was discharged from the hospital at which time he was immediately taken into custody on a warrant. The trial judge concluded that the defendant had been advised and that he understood that the blood was to be drawn for police purposes at a time when three police officers were present. In addition to these observations, we note that at the hearing on the motion to suppress the defendant took the stand and, although he could not remember exactly what took place at the hospital, he testified that he heard police sirens and when he got to the hospital he saw the police. He testified that he was served with a warrant and arrested when he was released from the hospital. He further testified that it was possible that he had squeezed Nurse Hill's hand in response to her questions about taking the blood sample.

After carefully examining the evidentiary record taken at the hearing on the motion to suppress, it is clear to us that the trial court was presented with a fact issue as to whether or not defendant Louis was in police custody at the time the blood sample was taken. We have concluded that there was substantial competent evidence to support the finding of the trial court that, at the time the blood sample was requested and taken at the hospital, there were significant restraints on the defendant's freedom of movement which had been imposed by the Topeka police officers.

We have considered the many cases cited by able counsel and have concluded that each case is distinguishable on its peculiar facts. For example, in *State v. Brunner*, 211 Kan. at 599, the trooper who asked the defendant to submit to the blood test was emphatic in his testimony that the defendant was not "arrested" and was not "in custody."

We do not consider as controlling the fact that the police did not physically restrain the defendant or advise him at the hospital that he was under arrest and in police custody. We do not believe that the law is so inhumane as to require a police officer to confront a seriously injured citizen in a hospital and specifically advise him that he is under arrest or in police custody. Under the factual circumstances in this case, the mere presence

of the police officers is sufficient to inform a hospitalized individual that his freedom of action is restricted. We think it especially important here that Nurse Hill informed the defendant that the sample of blood was being taken *for police purposes* at a time when three police officers were standing nearby. Under all the circumstances, we hold that the trial court did not err in denying defendant's motion to suppress the blood test. The evidence of the blood test was properly admitted into evidence at the trial.

The second point raised by the defendant on the appeal is that the trial court abused its discretion in sentencing the defendant to six consecutive sentences on the aggravated vehicular homicide convictions. On September 11, 1985, the defendant was sentenced to one-to-five years on each of the aggravated vehicular homicide convictions to run consecutively. On defendant's motion to modify the sentence, the district court permitted the consecutive sentences for the aggravated vehicular homicide convictions to stand. On this appeal, the defendant maintains that the district court abused its discretion by imposing the maximum sentences allowable for a class E felony on a first offense and, in addition, by ordering the six maximum sentences to run consecutively.

Specifically, defendant contends that the trial court abused its discretion in imposing consecutive sentences by failing to consider and apply the factors required by K.S.A. 21-4601 and K.S.A. 21-4606 and, further, by failing to set out in the record the reasons for the heavy sentences imposed. The general rule in Kansas is that a sentence which lies within the statutory limits set forth by the legislature will not be disturbed on appeal absent special circumstances showing an abuse of discretion. *State v. Williams*, 235 Kan. 485, 681 P.2d 660 (1984). At the time the sentences were finally determined when defendant's motion for modification was denied, the trial court had before it the court services officer's presentence report, the Sunflower Alcohol Safety Action Project report, and the report of the State Reception and Diagnostic Center. At the modification hearing, the trial court discussed the various statutory factors. The court noted that the defendant had no history of prior criminal activities. It noted that the act of the defendant was not intentional and that there was no provocation for the offenses. The trial court, however, could not disregard the fact that six innocent people had been

killed as a result of the defendant's criminal act. The trial court obviously could not get around the fact that the defendant's reckless and irresponsible disregard for the safety of others had resulted in the death of six innocent people, and the consecutive sentences were imposed.

We have considered the entire record in the case. Certainly the consecutive sentences were severe, but we cannot say that the trial court abused its discretion under all the facts and circumstances existing at that time.

We note, however, the provisions of K.S.A. 1985 Supp. 21-4603(4) which permit a trial court to reduce the minimum term of confinement at any time before the expiration of the sentence when such reduction is recommended by the secretary of corrections and the court is satisfied that the best interests of the public will not be jeopardized and the welfare of the inmate will be served by such reduction. If the defendant Louis, during the period of his confinement, demonstrates to the secretary of corrections and to the trial court by his attitude and conduct that the sentences imposed in this case should be reduced, then perhaps it may not be necessary for the defendant to serve the entire period of the consecutive sentences. That, of course, is a matter for the future which to a great extent is dependent upon the efforts of the defendant. We hold the trial court did not abuse its discretion in imposing consecutive sentences on the six convictions for aggravated vehicular homicide.

The third issue raised by the defendant on the appeal is that the trial court erred in finding the defendant guilty of aggravated vehicular homicide while engaged in reckless driving in violation of K.S.A. 1984 Supp. 8-1566, or driving while under the influence of alcohol or drugs in violation of K.S.A. 1984 Supp. 8-1567, when he was not charged with and convicted of reckless driving. Defendant maintains, in substance, that it is a prerequisite to a finding of guilty of aggravated vehicular homicide that the defendant also be charged either with reckless driving (K.S.A. 1984 Supp. 8-1566); driving under the influence of alcohol or drugs (K.S.A. 1984 Supp. 8-1567); or fleeing or attempting to elude a police officer (K.S.A. 8-1568). There are no Kansas cases specifically addressing this issue. However, in our judgment the resolution of this issue is controlled by our holding in *State v. Wise*, 237 Kan. 117, 697 P.2d 1295 (1985). In that case,

the defendant was convicted of felony murder. On appeal, the defendant contended that he could not be convicted of felony murder unless he was also charged with and convicted of the underlying felony. This court rejected that contention.

K.S.A. 1984 Supp. 21-3405a defines aggravated vehicular homicide as the unintentional killing of a human being *while engaged* in reckless driving in violation of K.S.A. 8-1566 and amendments thereto, or driving under the influence of alcohol or drugs in violation of K.S.A. 8-1567 and amendments thereto, or fleeing or attempting to elude a police officer in violation of K.S.A. 8-1568 and amendments thereto. While the statute provides for but one offense, it encompasses alternative violations. Nowhere does the statute require that a defendant be charged with the violation he was engaged in at the time of the unintentional killing. We find this point to be without merit.

The judgment of the district court is affirmed.