No. 120,472

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,
*Appellee/Cross-appellant*,

v.

BOARD OF COUNTY COMMISSIONERS OF FRANKLIN COUNTY, KANSAS,
*Defendant/Cross-appellee*,

and

CITY OF OTTAWA, KANSAS,
*Appellant/Cross-appellee*.

SYLLABUS BY THE COURT

1.

K.S.A. 2019 Supp. 22-4612 requires certain government agencies to pay the medical expenses incurred by persons in their custody.

2.

K.S.A. 2019 Supp. 22-4612 conveys the legislature's intent to hold government agencies liable for medical costs incurred for the treatment people receive while in their custody. This statute, in conjunction with K.S.A. 22-4613, is rooted in the principle that government agencies have a duty to treat people in their care humanely.

3.

The test for determining whether a government agency has an obligation to pay a person's medical expenses is whether a person is *in the agency's custody* when the decision was made to obtain medical treatment.

1

4.

A formal arrest is not always necessary to show a person is in custody. Instead, whether a person is in custody turns on the facts of each case.

5.

A party seeking summary judgment must show that there are no disputed issues of material fact and that judgment may therefore be entered as a matter of law—essentially, that there is nothing the fact-finder could decide that would change the outcome. The district court's task does not change simply because all parties have filed summary-judgment motions on stipulated facts. Each motion must be separately and independently reviewed under these summary-judgment standards.

6.

Under K.S.A. 8-2104(d), when a person is stopped by law enforcement for felonious traffic offenses, law enforcement has a legal duty to arrest the offender—to take the offender into custody and bring him or her before a judge. The officer conducting the stop has no discretion whether to take the offender into custody.

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed June 26, 2020. Affirmed in part, reversed in part, and remanded with directions.

*David Cooper*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, and *Jeannette L. Wolpink* and *Michael K. Seck*, of the same firm, of Overland Park, for appellant/cross-appellee.

*Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, for appellee/cross-appellant.

*Patric S. Linden*, *Kevin D. Case*, and *Cory R. Buck*, of Case Linden P.C., of Kansas City, Missouri, for defendant/cross-appellee.

Before HILL, P.J., GREEN and WARNER, JJ.

WARNER, J.: This case stems from a disagreement over who should pay the hospital bills a man incurred when he was injured in a fiery crash after fleeing from Ottawa police officers. Kansas statutes require certain government agencies to pay for the medical care a person receives while in their custody. The district court, based on stipulated facts, granted summary judgment in favor of the hospital in its claim against the City of Ottawa, finding as a matter of law that the police officers would have been required to arrest the man but for his injuries. We must decide whether the undisputed facts show the injured man was in the city's custody when he received his hospital treatment.

After reviewing the parties' allegations and arguments, we conclude there are unanswered factual questions that prevent us from deciding the billing dispute between the city and the hospital. We therefore reverse the district court's grant of summary judgment in favor of the hospital and remand the case to resolve these lingering questions. We also affirm the district court's judgment in favor of another government entity, the Franklin County Board of County Commissioners, as the county is not responsible to pay the injured man's medical expenses in this case.

FACTUAL AND PROCEDURAL BACKGROUND

On an April evening in 2014, Ottawa Police Sergeant A.J. Schmidt observed a man speeding through Ottawa in a Ford Expedition without its headlights on. Sergeant Schmidt recognized the driver, who had been arrested the previous evening for drug charges and had been released earlier in the day. Sergeant Schmidt radioed another Ottawa police officer to confirm the man's driver's license had been suspended. The sergeant then attempted to pull the Expedition over. The driver did not stop. Instead, he accelerated, leading Sergeant Schmidt and other officers on a high-speed chase through

3

the city. Sergeant Schmidt later agreed this event was "a felony fleeing and [e]luding situation."

The man drove northbound on Old US-59 Highway. He then entered US-59 Highway, driving the wrong way up the exit-ramp, and headed north toward the Ottawa city limit, still without headlights. Sergeant Schmidt told the officers to continue to pursue the driver until Stafford Road, which is near Ottawa's northern city limit. The Ottawa officers observed the Expedition exit the highway via the southbound on-ramp at Stafford Road. When they exited the highway at Stafford Road via the proper ramp, they no longer could see the vehicle.

Several Franklin County sheriff's deputies had overheard the chase on their radios and apparently began looking for the vehicle around the area where the Ottawa officers had lost sight of it. It did not take long before a Franklin County deputy found a crashed vehicle, fully engulfed in flames, in a ditch near the intersection of US-59 and Stafford Road. The Franklin County deputy approached the burning car and heard a voice calling for help. The deputy immediately radioed for emergency assistance.

The deputy found the car's driver lying on the ground, suffering from what appeared to be fractures of all four of his limbs. Sergeant Schmidt, who had by that time arrived at the crash scene, and several Franklin County deputies began moving the driver away from the flaming vehicle and surrounding grass fire.

When the EMS technicians arrived, they began assisting the driver. Knowing the driver had been recently arrested on drug charges, Sergeant Schmidt asked the man if he had taken any drugs the health care providers needed to be aware of; he responded that he had taken methamphetamine earlier that day. None of the law enforcement officers at the scene searched the driver. He also was never formally placed under arrest, though the parties later stipulated that Sergeant Schmidt had the authority to arrest the driver at the

4

scene of the crash even though it was outside the Ottawa city limits. (Sergeant Schmidt later testified that he advises Ottawa police officers not to take a suspect into custody if that individual needs medical care so the city does not have to pay the medical bills.) The driver was transported to the University of Kansas Medical Center by emergency helicopter.

The driver remained in the hospital for 10 days. During that time, he was placed on a police-hold by Wyandotte County for several outstanding warrants in that jurisdiction and guarded by Wyandotte County officers. Neither the City of Ottawa nor Franklin County placed a hold on him while he was in the hospital. The man's injuries included two broken legs, a broken ankle, a broken arm, a broken wrist, a collapsed lung, and nine fractured ribs. He did not have any health insurance and did not receive Medicaid assistance. The total amount billed by the hospital for his treatment and care was $235,498.22. At the time, the Medicaid reimbursement rate was 30.5% of this billed amount, for a total of $71,826.95.

Once he was discharged from the hospital, the man was immediately taken to the Wyandotte County jail based on his outstanding warrants (unrelated to the events that landed him in the hospital). Ottawa police officers interviewed him while he was at the Wyandotte County jail, asking about the car chase and ensuing crash. He had little to no memory of the events surrounding his flight from the Ottawa police, the crash, and the treatment he received at the wreck. He was ultimately charged with fleeing and eluding under K.S.A. 8-1568.

The University of Kansas Hospital Authority (the Hospital) later filed suit against the City of Ottawa (the City) and Franklin County's Board of County Commissioners (the County), alleging one or both of these agencies were required to pay the man's hospital bill under K.S.A. 22-4612(a). This statute requires certain government agencies to pay the medical expenses a person incurs when he or she is in custody. The Hospital also

5

initially sued the Wyandotte County Board of County Commissioners but subsequently dismissed its claims against that entity.

The parties conducted discovery, taking depositions of many of the law enforcement officers who had participated in the chase or the rescue. The parties then stipulated to several facts regarding the night of the crash, including that Sergeant Schmidt had the authority to arrest the driver the night of the crash but did not search him or formally place him under arrest.

All three parties filed motions for summary judgment. After considering the parties' arguments, the district court determined, as a matter of law, that the driver was in the City's custody under K.S.A. 22-4612(a) when the decision to obtain medical treatment was made. The district court explained that, but for the driver's injuries, the Ottawa police officers would have been *required* to arrest him after the car chase—as a result of his fleeing and eluding those officers. The court therefore granted summary judgment in the Hospital's favor against the City. But because the County deputies were not involved in the chase, did not observe the driver committing any felonies, and did not know who the driver was, the court granted summary judgment to the County on the Hospital's remaining claim.

The City appealed the district court's adverse summary-judgment ruling, and the Hospital cross-appealed the court's grant of summary judgment in favor of the County.

DISCUSSION

K.S.A. 2019 Supp. 22-4612 requires certain government entities to pay the costs of medical care incurred by persons in their custody. That statute directs, subject to some exceptions, that "a county, a city, [or] a county or city law enforcement agency . . . shall be liable to pay a health care provider for health care services rendered to persons in the

6

custody of such agencies." K.S.A. 2019 Supp. 22-4612(a). In such instances, the government entity must pay "the lesser of the actual amount billed by [the] health care provider or the medicaid rate" for the billed treatment. K.S.A. 2019 Supp. 22-4612(a).

The Kansas Supreme Court has explained that K.S.A. 22-4612 conveys the legislature's intent to hold government agencies liable for medical costs incurred for the treatment people receive while in their custody. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 999-1000, 348 P.3d 602 (2015). This statute, in conjunction with K.S.A. 22-4613, is rooted in the principle that government agencies have a duty to treat people in their care humanely. See *University of Kansas Hosp. Auth. v. Board of Wabaunsee County Comm'rs*, 299 Kan. 942, 952, 327 P.3d 430 (2014); *Pfannenstiel v. Doerfler*, 152 Kan. 479, 483, 105 P.2d 886 (1940); see also K.S.A. 22-4613(a) ("A law enforcement officer having custody of a person shall not release such person from custody merely to avoid the cost of necessary medical treatment while the person is receiving treatment from a health care provider," except in certain circumstances.). The test for determining whether this payment obligation arises is whether a person is *in the agency's custody* when the decision was made to obtain medical treatment. *University of Kan. Hosp. Auth.*, 301 Kan. at 1006.

1.  *Custody is a fact-dependent question and broader than formal arrest.*

The definition of "custody" has proved somewhat elusive. Black's Law Dictionary defines custody as "[t]he care and control of a thing or person for inspection, preservation, or security." Black's Law Dictionary 483 (11th ed. 2019); Black's Law Dictionary 467 (10th ed. 2014). And Webster's defines custody as "a guarding or keeping safe; care; protection; guardianship." Webster's New World College Dictionary 365 (5th ed. 2014).

7

In *University of Kan. Hosp. Auth.*, our Supreme Court reviewed the legislature's use of "custody" in chapter 22 of the Kansas Statutes and observed that "[a]t the least, under the plain meaning of the statutes, a person is in custody when under arrest." 301 Kan. at 1003. Compare K.S.A. 2019 Supp. 22-2202(i) (defining custody) with K.S.A. 2019 Supp. 22-2202(d) (defining arrest). But the court also found that a person may still be in "custody" under K.S.A. 22-4612(a) in the absence of physical restraints, posted guards, or even a formal arrest. See *University of Kan. Hosp. Auth.*, 301 Kan. at 1004. In other words, an "arrest might not always be necessary." 301 Kan. at 1006.

In fact, Kansas courts have long recognized that the definitions of "custody" found throughout the Kansas statutes show the term should be read broadly. See *State v. Hinkle*, 31 Kan. App. 2d 416, 417, 65 P.3d 1058 (2003). For example, the statutory sections governing "escape from custody" "encompass[] arrest or any other detention for law enforcement purposes." 31 Kan. App. 2d 416, Syl. ¶ 2 (citing K.S.A. 2002 Supp. 21-3809[b][1]). Other cases have found that a person may be in custody, even if not arrested, when "there are significant restraints on his freedom of movement which are imposed by some law enforcement agency." *State v. Louis*, 240 Kan. 175, Syl. ¶ 2, 727 P.2d 483 (1986); see also *Louis*, 240 Kan. at 183 (substantial competent evidence supported conclusion that a person was in custody when he had a blood sample taken at the hospital at the request of police officers).

And Kansas caselaw is awash with examples of indigent criminal offenders who were never formally arrested yet were still in custody for purposes of determining agencies' payment responsibilities. See *Allen Memorial Hosp. v. Board of Butler County Comm'rs*, 12 Kan. App. 2d 680, 685, 753 P.2d 1302 (1988) (intoxicated person was in custody when deputy accompanied him in an ambulance to the hospital); *Dodge City Med. Center v. Board of Gray County Comm'rs*, 6 Kan. App. 2d 731, 732-33, 634 P.2d 163 (1981) (individual shot by sheriff during the commission of a felony and taken to the hospital was in custody because "[h]ad he not been injured there is no question but that

8

pursuant to duty the sheriff would have taken him to jail"); *Mt. Carmel Medical Center v. Board of County Commissioners*, 1 Kan. App. 2d 374, 379, 566 P.2d 384 (1977) (sheriff's deputy had statutory duty to obtain custody of escaped prisoner and thus "custody had been reestablished as a matter of law prior to the prisoner's being placed in the ambulance and transported to the hospital"). Although these cases were decided before the enactment of K.S.A. 22-4612, our Kansas Supreme Court has indicated they are instructive in determining what "custody" means for purposes of that statute. *University of Kan. Hosp. Auth.*, 301 Kan. at 1004-06.

In *Dodge City Med. Center*, a sheriff's deputy came across a man committing a burglary. When the deputy demanded the man to surrender, the burglar opened fire. The deputy then returned fire and shot the burglar. The deputy then called an ambulance, and the man was taken to the hospital for treatment. "No formal arrest was made" at the time of the shooting "or at any time during [his] three-week stay in the hospital, nor was he under guard." 6 Kan. App. 2d at 731. The sheriff's department arrested him when he was discharged from the hospital, and the man was charged with various crimes relating to the burglary and shooting.

The district court held a trial on stipulated facts and ultimately found the man was in custody when he went to the hospital. This court affirmed, finding substantial competent evidence supported the district court's ruling. The *Dodge City Med. Center* court explained that the burglar "was apprehended in the commission of a felony. Had he not been injured there is no question but that pursuant to duty the sheriff would have taken him to jail and not to the hospital." 6 Kan. App. 2d at 732. The court continued:

> "Had the deputy said 'you're under arrest' instead of merely calling for [the burglar's] surrender, or had the sheriff uttered those words any time before committing him to the doctor's care, the fact of custody would be clear. We cannot avoid reaching the same conclusion simply because those words, implied by all the circumstances, were not actually spoken." 6 Kan. App. 2d at 733.

9

More recent cases have similarly recognized that a formal arrest is not always necessary to show a person is in custody. Instead, whether a person is in custody turns on the facts of each case. Thus, in *Stormont-Vail Healthcare v. Board of Jackson County Comm'rs*, No. 117,650, 2018 WL 2170117 (Kan. App.) (unpublished opinion), *rev. denied* 309 Kan. 1354 (2018), this court concluded that a man was in custody after fleeing from a law enforcement officer and eventually surrendering, even though he was not arrested before he received medical treatment for his injuries from the flight. A year later, we came to a different conclusion in a case involving the same parties but vastly different facts—finding a person was not in custody when an attempted burglar was shot by a homeowner, ran away, and was eventually apprehended by law enforcement (though the officers did not witness the attempted break-in). *Stormont-Vail Healthcare v. Board of Jackson County Comm'rs*, No. 118,428, 2019 WL 1303580 (Kan. App. 2019) (unpublished opinion).

Under this line of cases, the fact that neither the County nor the City law enforcement officers formally arrested the driver here for his felonious conduct does not end our enquiry. Instead, we must determine whether the stipulated facts in this case support the district court's summary-judgment rulings.

2. *Unresolved factual questions preclude summary judgment in favor of the Hospital.*

The instant case was presented on competing motions for summary judgment. The district court, having reviewed the uncontroverted facts, found the County deputies "were not involved in the chase," "did not observe any of the felonies committed," "were not aware if this individual was the driver who had committed those felonies," and "did not restrain" him. Thus, the court found the man was not in the County's custody. But because Sergeant Schmidt and the other Ottawa police officers observed the driver of the Expedition engaging in felonious fleeing and eluding of law enforcement officers, the

10

court found they had a duty to arrest him and "would have arrested him but for the fact that he was injured." The court therefore found the driver was in the City's custody for purposes of K.S.A. 21-4612(a).

A party seeking summary judgment must show that there are no disputed issues of material fact and that judgment may therefore be entered as a matter of law—essentially, that there is nothing the fact-finder could decide that would change the outcome. K.S.A. 2019 Supp. 60-256(c)(2); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). To fend off summary judgment, the opposing party must respond by pointing to evidence casting doubt on a material factual representation made in support of that motion. 289 Kan. at 900. If the opposing party does so, the motion for summary judgment should be denied, leaving the fact-finder to resolve the factual dispute. 289 Kan. at 900.

In ruling on a summary-judgment motion, the district court must view the evidence in the light most favorable to the opposing party, giving that party the benefit of every reasonable inference drawn from the evidentiary record. 289 Kan. at 900. The district court's task does not change simply because all parties have filed summary-judgment motions on stipulated facts—each motion must be separately and independently reviewed under these summary-judgment standards. See *Wheeler v. Rolling Door Co.*, 33 Kan. App. 2d 787, 790-91, 109 P.3d 1255 (2005). On appeal, we apply the same framework, reviewing each summary-judgment decision de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). And to the extent our analysis requires the examination, interpretation, and assimilation of various Kansas statutes, we similarly exercise unlimited review. *University of Kansas Hosp. Auth.*, 299 Kan. at 951.

With these principles in mind, we first consider the district court's grant of summary judgment for the County. When the City appealed its adverse judgment, the Hospital cross-appealed the court's decision that the driver had not been in the County's

11

custody. The Hospital initially argued that summary judgment was not proper, as "both defendants had personnel on the scene" and "both had the authority to arrest." But during oral argument, the Hospital expressly waived its cross-appeal, indicating that going forward it would be focusing on the City's arguments.

In light of this concession, we do not discuss in great detail the Hospital's previous arguments concerning the court's grant of summary judgment to the County. We only note that—as the district court found—it was undisputed that the County deputies did not witness any of the crimes committed by the driver of the Expedition, did not participate in the chase, and did not have any knowledge of his identity or previous arrest history, beyond what someone may have heard on the radio. While it is true that the County deputies had the *authority* to arrest him once they learned of his identity and conduct, discretionary authority is not the same as a legal duty to arrest (giving rise to implied custody). See *Stormont-Vail Healthcare*, 2019 WL 1303580, at *6. In short, the undisputed facts demonstrate the driver was not in the County's custody when medical care was sought. The County had no responsibility to pay the medical bills he incurred, and the district court correctly granted summary judgment in its favor.

Whether the driver was in the City's custody presents a more difficult question. The Hospital correctly notes that there are many facts that might point to such a conclusion. After all, the parties stipulate that Sergeant Schmidt observed the driver speeding through town without headlights, though it was evening. Sergeant Schmidt recognized the driver and confirmed the driver had a suspended license; the sergeant and other City police officers pursued the driver in a dangerous chase. The officers followed the driver to his final exit, though they did not observe the crash. Sergeant Schmidt arrived at the scene of the crash, arguably still in pursuit of the felonious actor and close enough in time that he was able to assist the deputy in removing the driver from the fire. In other words, there are certainly facts in this case—analogous to those discussed in

12

*Dodge City Med. Center* and our 2018 *Stormont-Vail Healthcare* decision—that tend to show the driver was in the City's custody.

At the same time, the City points to numerous facts and inferences that would contradict such a finding. The City argues that the police officers lost sight of the Expedition when it exited (via an on-ramp) US-59 Highway. The parties stipulated that these officers shortly thereafter "discontinued the pursuit" (although Sergeant Schmidt continued to the scene of the crash). And the driver was never formally arrested or physically restrained, nor did he expressly surrender. The stipulated facts do not resolve these factual disagreements; rather, their resolution would require more detailed factual development, assessment of witnesses' credibility, and weighing of the evidence— determinations improper at the summary-judgment stage.

At the summary-judgment hearing, the district court acknowledged the conflicting facts and inferences argued by both parties. But it concluded the City's potential liability did not require resolution of these contested facts because the Ottawa police officers had a legal duty under K.S.A. 8-2104 to arrest the driver after witnessing the driver's dangerous flight from law enforcement.

In his deposition, Sergeant Schmidt acknowledged the driver's conduct at the time presented a "felony fleeing and [e]luding situation." Certainly, based on the facts before us, we readily appreciate the sergeant's judgment that the driver's actions would fall within the scope of K.S.A. 8-1568(b)(1). See K.S.A. 2019 Supp. 8-1568(c)(2) (defining such offenses as severity level 9, person felonies). In these circumstances, K.S.A. 8-2104(d) requires an offender, once stopped by law enforcement, be taken into custody and before a judge:

> "When any person is stopped by a law enforcement officer and is to be charged
> with violation of any statute defining a traffic violation which is a felony, the person shall

13

be taken without unnecessary delay before a judge of the district court as specified in subsection (d) of K.S.A. 8-2106, and amendments thereto."

Accord K.S.A. 8-2104(a)(2) (similarly requiring a person be taken into custody and before a judge when a person is stopped for and is to be charged with misdemeanor violations "of K.S.A. 8-1567 and 8-1568").

Under K.S.A. 8-2104(d), when a person is stopped by law enforcement for felonious traffic offenses, the law enforcement officer has a legal duty to arrest the offender—to take the offender into custody and bring him or her before a judge. That is, as in other instances where we have found implied custody without a formal arrest, the officer conducting the stop has no discretion whether to take the offender into custody. See *Allen Memorial Hosp.*, 12 Kan. App. 2d at 685; *Dodge City Med. Center*, 6 Kan. App. 2d at 732-33; *Mt. Carmel Medical Center*, 1 Kan. App. 2d at 379; see also *Stormont-Vail Healthcare*, 2018 WL 2170117, at *2 (noting K.S.A. 8-2104[a][2] required the officer to take the offender into custody).

This court addressed the misdemeanor component of this statute—K.S.A. 8-2104(a)(2)—in our 2018 *Stormont-Vail Healthcare* decision. In that case, we concluded the police officer had a legal duty under the statute to take the offender into custody once he had surrendered, and the only reason the officer did not do so was to allow the offender to receive medical treatment.

But while we can appreciate the similarity between the facts in that case and those presented here, there is at least one legally important distinction: In the 2018 case, the parties stipulated that the offender had surrendered to the police officer. The offender was therefore *stopped by law enforcement*, triggering the officer's legal obligation to take the offender into custody under K.S.A. 8-2104. Here, we have no such stipulation. Rather, although the parties agreed on numerous facts, the arguments before the district court and

14

on appeal evince a genuine factual disagreement regarding whether Sergeant Schmidt effectively stopped the driver when he arrived at the crash. Without resolving this question, we cannot determine whether the sergeant had any legal duty to take the driver into custody under K.S.A. 8-2104(d).

For these reasons, the district court erred when it granted summary judgment in favor of the Hospital. Although all parties presented this case as one that could be decided on the stipulated facts, the parties' stipulation does not resolve the two central questions here—whether the driver was "stopped" within the meaning of K.S.A. 8-2104(d) and, if not, whether the driver was otherwise in the City's custody when he was taken to the Hospital. The case must be remanded to resolve these factual disputes.

We therefore reverse the district court's grant of summary judgment on the Hospital's claim against the City and remand the case for further proceedings as to that claim. We affirm the court's summary judgment in favor of the County.

Affirmed in part, reversed in part, and remanded with directions.